U.S. COURT OF APPEALS
RECEIVED
CLERK
APR 0 7 2014
ATLANTA, GA.

Case No. ▓▓▓▓▓▓▓▓



14-90008 D

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

APR 0 7 2014

JOHN LEY
CLERK

JASON M. COX, et al.,

Plaintiffs/Respondents,

v.

COMMUNITY LOANS OF AMERICA, INC., et al.,

Defendants/Petitioners.

---

Petition for Permission to Appeal from an Order of the United States District Court for the Middle District of Georgia

---

## DEFENDANTS' RULE 23(f) PETITION FOR PERMISSION TO APPEAL FROM AN ORDER ON CLASS CERTIFICATION

---

Stephen M. Forte
Edward H. Wasmuth, Jr.
David C. Newman
Colin R.P. Delaney

SMITH, GAMBRELL & RUSSELL, LLP
Promenade, Suite 3100
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309-3592
Telephone: 404-815-3500
Facsimile: 404-815-3509

*Attorneys for Petitioners*

Case No. _____

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

JASON M. COX, et al.,

Plaintiffs/Respondents,

v.

COMMUNITY LOANS OF AMERICA, INC., et al.,

Defendants/Petitioners.

---

Petition for Permission to Appeal from an Order of the United States District Court
for the Middle District of Georgia

---

## DEFENDANTS' RULE 23(f) PETITION FOR PERMISSION TO APPEAL
## FROM AN ORDER ON CLASS CERTIFICATION

---

Stephen M. Forte
Edward H. Wasmuth, Jr.
David C. Newman
Colin R.P. Delaney

SMITH, GAMBRELL & RUSSELL, LLP
Promenade, Suite 3100
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309-3592
Telephone: 404-815-3500
Facsimile: 404-815-3509

*Attorneys for Petitioners*

## **INDEX TO CONTENTS OF PETITION**

Tab 1        Petition

Tab 2        Order of the District Court, entered March 24, 2014

*Cox v. Community Loans of America*, Case No. _____

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

IN ACCORDANCE with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, counsel for Petitioners hereby certifies that to the best of counsel's knowledge, the following is a complete list of trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that may have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1. Ad-Vantage Advertising, Inc. (affiliate of Defendants)

2. Alabama Title Acquisition, Inc. (affiliate of Defendants)

3. Alabama Title Loans, Inc. (Defendant)

4. America's Gold Buyers, LLC  (created in Arizona) (affiliate of Defendants)

5. America's Gold Buyers, LLC (created in Delaware) (affiliate of Defendants)

6. America's Gold Buyers, LLC (created in Georgia) (affiliate of Defendants)

7. America's Gold Buyers, LLC (created in Louisiana) (affiliate of Defendants)

8. Atlanta Direct Auto Finance, Inc. (affiliate of Defendants)

9. Automotive Remarketing, Inc. (affiliate of Defendants)

10. Barnes Law Group, LLC (counsel for Named Plaintiffs)

11. Barnes, Roy E., Esq. (counsel for Named Plaintiffs)

*Cox v. Community Loans of America*, Case No. _____

12.  Bevis, John R., Esq. (counsel for Named Plaintiffs)

13.  Bowers, Christopher J., Esq. (counsel for Defendants)

14.  California Auto Lenders, LLC (affiliate of Defendants)

15.  Carolina Payday Loans, Inc. (affiliate of Defendants)

16.  Carolina Title Loans, Inc. (affiliate of Defendants)

17.  Castillo, Estevan (Named Plaintiff)

18.  CF of Georgia, LLC (affiliate of Defendants)

19.  CLA UK Holdings, LLC (affiliate of Defendants)

20.  CLPS, LLC (affiliate of Defendants)

21.  Community GSA, LLC (affiliate of Defendants)

22.  Community Management, LLC (affiliate of Defendants)

23.  Community UK Holdings, LLC (affiliate of Defendants)

24.  Consumer Funding, LLC (affiliate of Defendants)

25.  Cox, Jason M. (Named Plaintiff)

26.  Crowley, Scott C. , Esq. (former counsel for Named Plaintiffs)

27.  Crowley | McKoon (former counsel for Named Plaintiffs)

28.  Dakota Auto Title Loans, Inc. (Defendant)

29.  Dakota Title Loans, Inc. (affiliate of Defendants)

30.  Day | Crowley, LLC (former counsel for Named Planitiffs)

31.  Delaney, Colin R.P., Esq. (counsel for Defendants)

*Cox v. Community Loans of America*, Case No. _____

32.  Delaware Title Loans, Inc. (Defendant)

33.  Drake, Martin H., Esq. (former counsel for Named Plaintiffs)

34.  Fast Auto & Payday Loans, Inc. (created in Iowa) (affiliate of Defendants)

35.  Fast Auto & Payday Loans, Inc. (created in Louisiana) (Defendant)

36.  Fast Auto and Payday Loans, Inc. (created in Michigan) (affiliate of Defendants)

37.  Fast Auto and Payday Loans, Inc. (created in Ohio) (affiliate of Defendants)

38.  Fast Auto and Payday Loans, Inc. (created in Washington) (affiliate of Defendants)

39.  Fast Auto and Payday Loans, LLC (affiliate of Defendants)

40.  Fast Auto Loans, Inc. (created in Arizona) (Defendant)

41.  Fast Auto Loans, Inc. (created in Virginia) (affiliate of Defendants)

42.  Fast Auto Loans of Texas, LLC (affiliate of Defendants)

43.  Fast Forward Payments, Inc. (affiliate of Defendants)

44.  Fast Payday Loans, Inc. (created in Arizona) (affiliate of Defendants)

45.  Fast Payday Loans, Inc. f/k/a Fast Auto Loans, Inc. (created in Florida) (affiliate of Defendants)

46.  Fast Payday Loans, Inc. (created in Michigan) (affiliate of Defendants)

47.  Fast Payday Loans, Inc. (created in Virginia) (affiliate of Defendants)

48.  Fast Payday Loans, Inc. (created in Washington) (affiliate of Defendants)

*Cox v. Community Loans of America*, Case No. _____

49. Fast Payday Loans of Colorado, LLC (created in Colorado) (affiliate of
    Defendants)

50. Fast Payday Loans of Colorado, LLC (created in Georgia) (affiliate of
    Defendants)

51. Fast Payday Loans of Indiana, LLC (created in Georgia) (affiliate of
    Defendants)

52. Fast Payday Loans of Indiana, LLC d/b/a Fast Payday Loans (created in
    Indiana) (affiliate of Defendants)

53. Fast Payday Loans of Iowa, LLC (created in Georgia) (affiliate of
    Defendants)

54. Fast Payday Loans of Iowa, LLC (created in Iowa) (affiliate of Defendants)

55. Fast Payday Loans of Kansas, LLC (created in Georgia) (affiliate of
    Defendants)

56. Fast Payday Loans of Kansas, LLC (created in Kansas) (affiliate of
    Defendants)

57. Fast Payday Loans of Kentucky, LLC (created in Georgia) (affiliate of
    Defendants)

58. Fast Payday Loans of Kentucky, LLC (created in Kentucky) (affiliate of
    Defendants)

59. Fast Payday Loans of Nebraska, LLC (affiliate of Defendants)

*Cox v. Community Loans of America*, Case No. _____

60. Fast Payday Loans of Ohio, LLC (created in Georgia) (affiliate of Defendants)

61. Fast Payday Loans of Ohio, LLC d/b/a/ Fast Payday Loans (created in Ohio) (affiliate of Defendants)

62. Fast Payday Loans of Nebraska, LLC (created in Georgia) (affiliate of Defendants)

63. Fast Payday Loans of Nebraska, LLC (created in Nebraska) (affiliate of Defendants)

64. Fast Texas Title Credit, LLC (affiliate of Defendants)

65. Fast Title Credit, LLC (affiliate of Defendants)

66. Fast Title Loans of Louisiana, LLC (created in Georgia) (affiliate of Defendants)

67. Fast Title Loans of Louisiana, LLC (created in Louisiana) (affiliate of Defendants)

68. Fields, Terry (Defendant)

69. Fischer | Scott, LLC (counsel for Named Plaintiffs)

70. Fischer, Kyle S., Esq. (counsel for Named Plaintiffs)

71. Forte, Stephen M., Esq. (counsel for Defendants)

72. Georgia Auto Pawn, Inc. (Defendant)

73. Georgia Title Acquisition, Inc. (affiliate of Defendants)

*Cox v. Community Loans of America*, Case No. _____

74.  Idaho Title Loans, Inc. (Defendant)

75.  Illinois Title Loans, Inc. (Defendant)

76.  Indian Harbor Insurance Company (insurer)

77.  Land, Hon. Clay D. (Judge, United States District Court)

78.  Loan Star Title and Payday, LLC (affiliate of Defendants)

79.  Lewis-Vinson, Alesia (Named Plaintiff)

80.  Mississippi Title Loans, Inc. (Defendant)

81.  Missouri Title Loans, Inc. (Defendant)

82.  Montana Title Loans, Inc. (affiliate of Defendants)

83.  Nation Wide Gold Buyers, LLC (affiliate of Defendants)

84.  National Auto Lenders, Inc. (affiliate of Defendants)

85.  Nevada Title & Payday Loans, Inc. (Defendant)

86.  New England Auto Finance, Inc., f/k/a New England Auto and Payday

     Loans, Inc. (mis-identified in the Second Amended Complaint as New

     England Auto and Pay Loans, Inc.) (Defendant)

87.  New Mexico Title Loans, Inc. (Defendant)

88.  Newman, David C., Esq. (counsel for Defendants)

89.  North Carolina Auto Loans, Inc. (affiliate of Defendants)

90.  PR Auto Loans, LLC (created in Georgia) (Defendant)

91.  PR Auto Loans, LLC (created in Puerto Rico) (affiliate of Defendants)

*Cox v. Community Loans of America*, Case No._____

92. Premium Title Lenders, LLC (affiliate of Defendants)

93. Premium Title Lending, LLC (affiliate of Defendants)

94. Premium Title Loan Company, LLC f/k/a Premium Title Loans, LLC (affiliate of Defendants)

95. Premium TLC, LLC (affiliate of Defendants)

96. Reich, Robert I. (Defendant)

97. Reicher, Hulsman and Associates, Inc. (created in Alabama) (affiliate of Defendants)

98. Reicher, Hulsman and Associates, Inc. (created in Arizona) (affiliate of Defendants)

99. Reicher, Hulsman and Associates, Inc. (created in Georgia) (affiliate of Defendants)

100. Reicher, Hulsman and Associates, Inc. (created in Illinois) (affiliate of Defendants)

101. Reicher, Hulsman and Associates, Inc. (created in Missouri) (affiliate of Defendants)

102. Reicher, Hulsman and Associates, Inc. (created in Mississippi) (affiliate of Defendants)

103. Reicher, Hulsman and Associates, Inc. (created in South Carolina) (affiliate of Defendants)

*Cox v. Community Loans of America*, Case No.:_____

104. Reicher, Hulsman and Associates, Inc. (created in Texas) (affiliate of Defendants)

105. Reicher, Hulsman and Associates, Inc. (created in Utah) (affiliate of Defendants)

106. Resale Autos, Inc. (affiliate of Defendants)

107. Sanders, Wm. Parker, Esq. (counsel for Defendants)

108. Smith, Gambrell & Russell, LLP (counsel for Defendants)

109. South Carolina Title Acquisition, Inc. (affiliate of Defendants)

110. Southern Fast Loans of Alabama, LLC (created in Alabama) (affiliate of Defendants)

111. Southern Fast Loans of Alabama, LLC (created in Georgia) (affiliate of Defendants)

112. Southern Fast Loans of Georgia, Inc. (created in Florida) (affiliate of Defendants)

113. Southern Fast Loans of Georgia, Inc. (created in Georgia) (affiliate of Defendants)

114. Southern Fast Loans of Louisiana, Inc. (Defendant)

115. Southern Fast Loans of Mississippi, Inc. (affiliate of Defendants)

116. Southern Fast Loans of South Carolina, Inc. (affiliate of Defendants)

117. Southern Fast Title Loans of South Carolina, Inc. (affiliate of Defendants)

*Cox v. Community Loans of America*, Case No. _____

118. Tennessee Cash Cow, Inc. (affiliate of Defendants)

119. Tennessee Title Acquisitions, Inc. (affiliate of Defendants)

120. Tennessee Title Loans, Inc. (Defendant)

121. Texas Car Title & Payday Credit, Inc. (affiliate of Defendants)

122. Texas Car Title & Payday Loans, Inc. (affiliate of Defendants)

123. Texas Car Title & Payday Loan Services, Inc. (Defendant)

124. Texas Loan Services, Inc. (created in Georgia) (affiliate of Defendants)

125. Texas Loan Services, Inc. (forced d/b/a is Community Business Services, Inc.) (created in Texas) (affiliate of Defendants)

126. Texas Title and Payday Loans, LLC (Defendant)

127. Texas Title Loans, LLC (affiliate of Defendants)

128. Tookes, Leo Thomas, Jr. (Named Plaintiff)

129. Triangle Financial Inc. (affiliate of Defendants)

130. Tribble, J. Cameron, Esq. (counsel for Named Plaintiffs)

131. USA Payday Lenders, LLC (affiliate of Defendants)

132. United States Title Loan Company (affiliate of Defendants)

133. US Title Loans, Inc. (affiliate of Defendants)

134. Utah Title Loans, Inc. (Defendant)

135. Virginia Auto Loans, Inc. (affiliate of Defendants)

136. Wasmuth, Edward H., Jr., Esq. (counsel for Defendants)

*Cox v. Community Loans of America*, Case No.:_____

137. Wisconsin Auto Title Loans, Inc. (Defendant)

138. XL Group, plc  (NYSE Ticker: XL) (parent of insurer)

139. 514Cash.com, LLC (affiliate of Defendants)

140. All covered members of the armed services and their dependents who,
between October 1, 2007 and January 2, 2013, entered into, rolled over,
renewed, refinanced, or consolidated a vehicle title loan by any means with a
Defendant that imposed an annual percentage rate of greater than 36 percent
and required the title of a vehicle as security for the obligation for a term of
181 days or less.  For purposes of this class definition, a covered member of
the armed services is a member of the armed forces who is (A) on active
duty under a call or order that does not specify a period of 30 days or less; or
(B) on active Guard and Reserve Duty.  A dependent of a covered member
means the covered member's spouse, child, or an individual for whom the
member provided more than one-half of the individual's support for 180
days immediately preceding the extension of consumer credit.  For purposes
of this class definition, the phrase "vehicle title loan by any means" includes
vehicle title loans, vehicle title pawns, and vehicle title pledges, and the
phrase "covered members" does not include individuals who executed a
statement at the time of the transaction indicating that they were not
affiliated with the military.  (The Class certified by the district court.)

*Cox v. Community Loans of America*, Case No. _____

This 7th day of April, 2014.

Respectfully submitted,

SMITH, GAMBRELL & RUSSELL, LLP

Stephen M. Forte
Georgia Bar No. 270035
Edward H. Wasmuth, Jr.
Georgia Bar No. 739636
David C. Newman
Georgia Bar No. 541148
Colin R.P. Delaney
Georgia Bar No. 216858

1230 Peachtree Street, N.E.
Promenade, Suite 3100
Atlanta, Georgia  30309-3592
Telephone: 404-815-3500
Facsimile:  404-815-3509

sforte@sgrlaw.com
ewasmuth@sgrlaw.com
dnewman@sgrlaw.com
cdelaney@sgrlaw.com

*Attorneys for Petitioners*

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND

CORPORATE DISCLOSURE STATEMENT ...................................................... C-1

TABLE OF AUTHORITIES ................................................................. iii

TABLE OF RECORD REFERENCES IN THE PETITION ................................ vi

PETITION.................................................................................... 1

QUESTIONS PRESENTED................................................................. 2

FACTUAL BACKGROUND ............................................................... 3

STANDARD FOR PERMITTING APPEAL UNDER RULE 23(f)...................... 4

WHY THIS APPEAL SHOULD BE ALLOWED....................................... 5

I.     The district court committed clear error in finding a class

       including military dependents ascertainable. ................................ 5

II.    The proper rigorous analysis would not result in finding

       commonality. ....................................................................... 8

       A.    The lower court failed to identify common claims, issues,

             and defenses. ............................................................... 8

       B.    The court's private-right-of-action ruling stopped short of

             deciding the crucial question: What, if any, common

             remedy is available? ..................................................... 9

C.    Finding commonality required all-but-resolving

dissimilar merits issues.  ................................................................... 12

III.    The district court failed to conduct a rigorous analysis of

predominance, superiority, and manageability. ........................................... 14

IV.    The district court abused its discretion in permitting Plaintiffs'

untimely assertion of class claims under Rule 23(b)(3).  ............................. 19

RELIEF REQUESTED.......................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Sandoval*,
    121 S. Ct. 1511 (2001)..................................................................10, 11

*Babineau v. Federal Exp. Corp.*,
    576 F.3d 1183 (11th Cir. 2009) ...........................................................15

*Bussey v. Macon Cnty. Greyhound Park, Inc.*,
    Case No. 13-12733, at 10-13 (11th Cir. April 2, 2014) ........................6

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) .............................................................2, 11, 17

*D.L. v. District of Columbia*,
    713 F.3d 120 (D.C. Cir. 2013)..............................................................12

*Ealy v. Pinkerton Gov't Servs., Inc.*,
    514 F. App'x 299 (4th Cir. 2013)..........................................................17

*General Tel. Co. v. Falcon*,
    102 S. Ct. 2364.......................................................................................1

*In re Pharma. Indus. Avg. Wholesale Price Litig.*,
    588 F.3d 24 (1st Cir. 2009) ...................................................................9

*Johnson v. American Credit Co.*,
    581 F.2d 526, 532 (5th Cir. 1978) ..................................................13 n.6

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) ......................................................15-16

*Little v. T-Mobile USA, Inc.*,
    691 F.3d 1302 (11th Cir. 2012) .............................................................6

*Love v. Delta Air Lines, Inc.*,
    310 F.3d 1347 (11th Cir. 2002) ...........................................................10

*Marcus v. BMW of North America, LLC,*
    687 F.3d 583 (3d Cir. 2012) ................................................6, 8-9

*Mogel v. Unum Life Ins. Co.,*
    677 F. Supp. 2d 362 (D. Mass. 2009) .................................19

*Prado-Steinman v. Bush,*
    221 F.3d 1266 (11th Cir. 2000) ....................................2, 4-5

*Robinson v. Texas Auto Dealers Ass'n,*
    387 F.3d 416 (5th Cir. 2004) ................................................19

*Romero v. Drummond Co.,*
    552 F.3d 1303 (11th Cir. 2008) ........................................19

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.,*
    601 F.3d 1159 (11th Cir. 2010) ..............................13, 16, 17

*TransAmerica Mortgage Advisors, Inc. v. Lewis,*
    100 S. Ct. 242 (1979) ..........................................................11

*Wachtel v. Guardian Life Ins. Co.,*
    453 F.3d 179 (3d Cir. 2006) ................................................8

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ......................................2, 12, 13, 20

*Washington v. Vogel,*
    158 F.R.D. 689 (M.D. Fla. 1994) .......................................19

*Wisniewski v. Rodale, Inc.,*
    510 F.3d 294 (3d Cir. 2007) ..............................................10

## Statutes

10 U.S.C. § 987............................................................1, 6 n.2, 16

10 U.S.C. § 987(f)(5) (2013) ............................................9 n.4

iv

**Rules**

Fed. R. Civ. P. 23.................................................................................*passim*

**Regulations**

32 C.F.R. § 232.5(a).......................................................................................3

**Other Authority**

Richard A. Nagareda, *Class Certification in the Age of Common Aggregate Proof*, 84 N.Y.U. L. REV. 97 (2009)..................................12

## TABLE OF RECORD REFERENCES IN THE PETITION

| Docket No. | | Petition Page No. |
|---|---|---|
| 1 | Verified Complaint for Damages and Corresponding Request for Declaratory and Injunctive Relief | 5 n.1 |
| 18 | Verified Amended Complaint for Damages and Corresponding Request for Declaratory and Injunctive Relief | 18 |
| 76 | Second Amended Complaint for Damages and Corresponding Request for Declaratory and Injunctive Relief | 18 |
| 115 | Memorandum of Law in Support of Plaintiffs' Motion for Class Certification | 12 |
| 127 | March 15, 2013 Status Report and Joint Motion for Stay | 7 n.3 |
| 131 | May 24, 2013 Status Report and Joint Motion for Continuation of Stay | 7 n.3 |
| 134 | June 28, 2013 Status Report and Joint Motion for Continuation of Stay | 7 n.3 |
| 139 | Defendants' Motion for Partial Summary Judgment on Counts II and VI Regarding Whether the MLA Creates a Private Right of Action and, if so, the Extent of Relief Available | 5 n.1 |
| 144 | Consent Order Modifying Certain Deadlines | 5 n.1 |
| 166 | Defendants' Brief in Opposition to Plaintiffs' Motion for Class Certification | 12 |
| 180 | Plaintiffs' Motion for Declaratory and Injunctive Relief | 5 n.1 |

| 184 | Defendants' Motion for Summary Judgment on the Merits | 5 n.1 |
| 187 | Hearing Transcript on Motion for Class Certification under Rule 23(b)(2) | 5 n.1, 6, 9 n.4, 20 |
| 189-1 | Third Declaration of Terry Fields | 7 |
| 190-1 | Third Amended Complaint for Damages and Corresponding Request for Declaratory and Injunctive Relief | 18 |
| 198 | Defendants' Response in Opposition to Plaintiffs' Motion for Leave to Amend Complaint a Third Time | 18 n.9 |
| 199 | Defendants' Response to Plaintiffs' Supplemental Brief on Class Certification | 14, 16 |
| 204 | Order on Class Certification | *Passim* |

Defendants petition for review of the district court's Order certifying a Rule 23(b)(3) class claiming violations of the Military Lending Act, 10 U.S.C. § 987 (2007) (the "MLA"). While addressing a wide range of merits and certification issues, the Order does not reflect the necessary "rigorous analysis" of several class-certification requisites, *General Tel. Co. v. Falcon*, 102 S. Ct. 2364, 2372 (1982), instead reaching bare conclusions and leaving far too much unexplained, unclear, or unaddressed. With discovery closed and summary-judgment motions resolved, Defendants face going to trial without knowing who is in the class, which issues are in play, what exposure they face, or how the parties will try and the court will manage the individualized proof required in this case.

The district court committed clear error in finding the class ascertainable, as the parties have no way of identifying military dependents. The class-certification Order failed to identify the common class claims, issues, or defenses, as expressly required by Rule 23(c)(1)(B). The Order achieved commonality only after all-but-deciding (or perhaps deciding) key merits issues against Defendants. Although the district court (wrongly) found an implied private right of action in the MLA, it stopped short of deciding whether the class has a common federal remedy or varying remedies under state law. And the district court, like Plaintiffs, failed to address in any meaningful way the predominance, superiority, and manageability problems presented by several individualized elements, defenses, and damages.

To the extent the district court considered these issues, its analysis and reasoning is absent from the class-certification Order. Given due consideration under the proper rigorous analysis, Plaintiffs' inability to establish ascertainability, commonality, predominance, superiority, and manageability precludes certification of the class as defined. Because the district court manifestly abused its discretion and this case presents the opportunity for this Court to give clear direction to district courts about what the rigorous analysis of class-certification issues must entail in the wake of *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), and *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2001), Defendants petition for permission to appeal under Rule 23(f), consistent with the guideposts in *Prado-Steinman v. Bush*, 221 F.3d 1266 (11th Cir. 2000).

## QUESTIONS PRESENTED

I.  Did the district court err in certifying a class that includes military dependents without addressing ascertainability, when Plaintiffs admit there is an ascertainability problem for dependents and the only evidence showed that information necessary to identify dependents does not exist?

II.  Did the district court err in concluding that common issues exist without identifying any such issues, without deciding whether federal law provides a common remedy for the alleged wrongs, and only by all-but-resolving merits issues against Defendants to give dissimilar claims a common veneer?

2

**III.** Did the district court err in failing to conduct the required predominance, superiority, and manageability analyses by weighing whether any unresolved common claims and issues predominate over the various outstanding individualized issues on liability, defenses, and damages, and in failing to assess how the case will be managed and tried?

## FACTUAL BACKGROUND

Plaintiffs alleged that Defendants perpetrated a nationwide scheme to violate the MLA by making vehicle title loans to servicemembers and dependents at interest rates in excess of 36%. Yet discovery revealed a policy and practice of strict compliance with the MLA since the law went into effect in October 2007, in that Defendants declined to make title loans to applicants who self-identified as a servicemember or dependent on a Covered Borrower Identification Statement ("CBIS"), as contemplated by the MLA regulations. 32 C.F.R. § 232.5(a). Believing in good faith that the MLA did not apply to pawn transactions because pawns do not involve the extension of credit governed by the MLA, the pawn business went on until the CBIS compliance program was expanded to pawn jurisdictions in December 2011. The CBIS-based compliance program means that most of the transactions at issue in this case took place in the three pawn jurisdictions between October 2007 and December 2011. All four of the Named Plaintiffs pawned motor vehicle titles during that period in Alabama and Georgia.

3

Three were on active duty at the time of their transactions, one a military spouse.

For over two years Plaintiffs prosecuted a putative mandatory class action under Rule 23(b)(2), seeking a compliance injunction, a declaration that contracts in violation of the MLA are void, and damages. After (b)(2) certification appeared in trouble at the class-certification hearing, Plaintiffs moved to amend the complaint and, with court permission, filed a brief seeking certification under Rule 23(b)(3). The court correctly denied (b)(2) certification. (Order at 30-32.) But the district court abused its discretion in certifying, under Rule 23(b)(3), a single nationwide class of servicemembers and unascertainable dependents. (*Id.* at 46.)

## STANDARD FOR PERMITTING APPEAL UNDER RULE 23(f)

*Prado-Steinman* identified "guideposts" for evaluating whether to grant permission to appeal from a class-certification order, which Rule 23(f) allows "on the basis of any consideration the court of appeals finds persuasive." This Court did not create "bright-line rules or rigid categories for accepting or denying Rule 23(f) petitions," emphasizing instead the "highly discretionary" authority conferred by the rule. *Prado-Steinman*, 221 F.3d at 1276. Pertinent to this case, "a *substantial* weakness in the class certification decision, such that the decision likely constitutes an abuse of discretion," militates in favor of granting review. *Id.* at 1274. "When the district court expressly applies the incorrect Rule 23 standard or overlooks directly controlling precedent," review "promises to spare the parties

4

and the district court the expense and burden of litigating the matter to final judgment only to have it inevitably reversed by this Court on appeal after final judgment." *Id.* at 1274-75. A mistake of law may invite interlocutory review. *Id.* at 1275. And if an appeal will permit resolution of an unsettled legal issue "important to the particular litigation as well as important in itself," or present an issue likely to arise repeatedly in the future, interlocutory review may well be warranted. *Id.* The Court will consider the stage of the litigation, including the development of the record and the likelihood that future motions will redefine issues or affect the scope of or need for a class. *Id.* at 1276.[1]

## WHY THIS APPEAL SHOULD BE ALLOWED

### I. The district court committed clear error in finding a class including military dependents ascertainable.

Plaintiffs initially moved to certify a class comprised of two subclasses, one for active-duty servicemembers and one for military dependents. As Plaintiffs acknowledged at the class-certification hearing, even though the MLA treats

---

[1] The district court held the hearing on Plaintiffs' motion to certify a class under Rule 23(b)(2) over two years after this case was filed. (Dkts. 1, 187.) At that time, discovery—on class certification *and the merits*—was complete and closed, per the Court's scheduling order. (Dkt. 144.) Plaintiffs had just moved for declaratory judgment and a permanent injunction. (Dkt. 180.) Defendants had just moved for summary judgment on the merits (Dkt 184), following on a separate motion for partial summary judgment to determine whether an implied private right of action exists in the MLA. (Dkt. 139.) As such, the record is fully developed, with little likelihood that future events will prompt changes in the certification Order.

servicemembers and dependents the same,[2] "it's going to be harder to identify who the dependents are . . . so that's why we broke them up" into separate subclasses. (Dkt. 187 at 51-53.)  In other words, ascertainability of class members presents a known and acute problem when it comes to dependents.

"Before a district court may grant a motion for class certification, a plaintiff . . . must establish that the proposed class is adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (internal quots. omitted); *see also Bussey v. Macon Cnty. Greyhound Park, Inc.*, Case No. 13-12733, at 10-13 (11th Cir. April 2, 2014).  "The ascertainability requirement serves several important objectives," including eliminating administrative burdens incongruous with class actions, protecting absent class members by facilitating practicable notice, and protecting defendants by making those bound by a class judgment identifiable. *Marcus v. BMW*, 687 F.3d 583, 593 (3d Cir. 2012).  "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id.* (class fails if nothing in company databases proves class membership).

---

[2] Applying to active-duty servicemembers and military dependents alike, the MLA defines (1) "covered member" as a member of the armed forces on active duty, and (2) "dependent" as a covered member's spouse or child or "an individual for whom [a covered] member provided more than one-half of the individual's support for 180 days immediately preceding an extension of consumer credit covered by this section."  10 U.S.C. § 987(i)(1) & (2).

Certifying a class that includes both active-duty and dependents, the district court found that "the class is ascertainable because the parties have determined a way to identify covered borrowers who entered a vehicle title loan transaction during the relevant timeframe." (Order at 45.) The court did not point to any ascertainability evidence or provide analysis of how the class will be ascertained.

As to dependents, the district court's finding is clearly erroneous. Though acknowledging the problem, Plaintiffs made no effort to show how dependents could be identified. The only evidence on ascertainability of dependents proves that, apart from signed CBIS's disavowing dependent status, Defendants' customer database and transaction files do not track or collect evidence of dependent status, so cannot provide objective evidence of class membership.[3]  (Dkt. 189-1 ¶ 3.) Given that undisputed evidence, the district court committed clear error in concluding that a class including dependents is ascertainable.

Without an ascertainable class, the rights of class members and Defendants cannot be protected. The very first post-certification step—providing the "best

---

[3] The parties' extensive efforts to identify potential dependents through various imperfect computer searches and a laborious manual file review (Dkts. 127, 131, 134) yielded thousands of false positive hits (in Defendants' view) or inconclusive results (in Plaintiffs' view). Since Defendants' databases do not track military or dependent status, the parties have no way of gauging the accuracy of the "hits" resulting from the imperfect computer searches, nevermind a way to identify any dependents not captured by those searches. In contrast, the parties generated a reliable list of active-duty customers by comparing Defendants' customer database to a Department of Defense database of active-duty personnel.

practicable notice"—is doomed to failure. Including dependents in a class defeats any possibility of class issues predominating over individual issues and makes this case unmanageable, as the threshold issue of class membership will have to be determined hundreds or thousands of times in mini-trials. For these reasons and others, certifying an unascertainable class that includes dependents was a manifest abuse of discretion warranting immediate reversal.

## II. The proper rigorous analysis would not result in finding commonality.

### A. The lower court failed to identify common claims, issues, and defenses.

Rule 23(c)(1)(B) mandates that an Order certifying a class "must define the class and the class claims, issues, or defenses. . . ." The Order defines the class but fails to define the class claims, issues, or defenses. Although this Court has not yet had occasion to elaborate on the Rule 23(c)(1)(B) requirements, the habit of district courts "treat[ing] the parameters of the class itself much more clearly and deliberately than the class claims, issues, or defenses" has come under heavy scrutiny in other circuits. Rule 23(c) "requires more specific and more deliberate treatment of the class issues, claims, and defenses than the [regular practice] has usually reflected." *Wachtel v. Guardian Life Ins. Co.*, 453 F.3d 179, 184-86 (3d Cir. 2006) (criticizing certification orders often "devoid of any clear statement regarding the full scope and parameters of the claims, issues, or defenses to be treated on a class basis as the matter is litigated"); *see also Marcus*, 687 F.3d at

591-92; *In re Pharma. Indus. Avg. Wholesale Price Litig.*, 588 F.3d 24, 38-40 (1st Cir. 2009) (better comprehension and explanation of the class and the class claims helps district courts, appellate courts, attorneys, parties, and absent class members receiving notices to proceed with more information and mutual understanding). The district court's error is palpable.

Interlocutory review of this case would allow this Court to address the importance and proper fashion of complying with Rule 23(c)(1)(B) in all class actions, while avoiding substantial prejudice to Defendants (from not knowing what will be tried on a class-wide basis) and absent class members (from being unable to make an informed opt-out decision).

### B. The court's private-right-of-action ruling stopped short of deciding the crucial question: What, if any, common remedy is available?

Whether the MLA impliedly created a private right of action is "inextricably intertwined with the question whether there are common issues of law for class adjudication." (Order at 5.) For without an implied private right of action for violation of the MLA, no common claim could bind a nationwide class together.

On an issue of first impression, the district court concluded that Congress created an implied private right of action in the pre-2013 MLA.[4] (Order at 5-12.)

---

[4] An amendment to the MLA in 2013 created an express private right of action for transactions on or after January 2, 2013. 10 U.S.C. § 987(f)(5) (2013). Plaintiffs conceded to excluding post-amendment transactions from the class. (Dkt. 187 at 60-61.) If the class has a private right of action, it must be implied.

But the district court did not decide the related and essential question: Did Congress also impliedly created a federal remedy common across the class, or must class members resort instead to state law for any recovery? Referring to both a "private right of action for damages" and "an unjust enrichment remedy" (Order at 11, 12 n.4), the Order suggests both possibilities.[5]

The Order is fundamentally incomplete and, as far as it went, erroneous. Knowing whether a common remedy exists affects the predominance analysis necessary to certifying a class. And private-right-of-action jurisprudence requires considering whether Congress created a remedy.

"The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 121 S. Ct. 1511, 1519-20 (2001). As the text of the MLA contains no language creating private rights and also private remedies for covered borrowers, the district court erred in holding that Congress impliedly created a private right of action. *See Love v. Delta Air Lines, Inc.*, 310 F.3d 1347, 1351, 1353 (11th Cir. 2002) (emphasizing search for intent to "confer a private right and a private remedy"); *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 297, 301

---

[5] The incomplete and imprecise ruling on this issue inextricably intertwined with class certification highlights the problems created by the district court's failure to identify the class claims, issues, and defenses (Part II.A, *supra*). The Order leaves unclear whether class-wide litigation will determine just rights under the MLA or remedies as well.

(3d Cir. 2007). Without having found a private remedy in the MLA, the district court could not logically conclude that an implied private right of action exists.

To the extent the district court left open the possibility that, if an implied private right of action exists it comes with a private remedy in damages, the district court erred again by reaching a result contrary to *TransAmerica Mortgage Advisors, Inc. v. Lewis*, 100 S. Ct. 242 (1979). In that case involving contracts rendered void for violation of a federal statute, the Supreme Court found an implied limited private remedy for rescission and at most restitution, but not for any other compensation or damages. *Id.* at 249 & n.14. If *TransAmerica* remains good law after *Sandoval*, on which there is considerable doubt, it certainly limits the implied remedy to restitution and forecloses any possibility of damages.

Knowing whether just the right or both the right and the remedy present common issues is essential to the predominance analysis under Rule 23(b)(3). A single federal restitution remedy affects the analysis differently than 18 state unjust-enrichment or other remedies with potentially varying elements, standards, defenses, and recoveries. After *Comcast*, rigorous analysis of the Rule 23 requisites must consider how the available remedies affect the predominance and superiority analyses, so must include determining whether a common remedy exists and, if so, what it is. By not deciding what remedy exists, the district court made rigorous analysis of predominance and superiority impossible.

11

### C. Finding commonality required all-but-resolving dissimilar merits issues.

Plaintiffs urged a broad common question: "Whether the transactions violate the MLA." (Dkt. 115 at 21.) Defendants argued that the different contracts and regulatory schemes in controversy mean that the proposed class question actually presents at least four different issues. (Dkt. 166 at 17-22.) As the Supreme Court explained in *Dukes*, alleging that class members "all suffered a violation of the same provision of law" will not suffice because a law "can be violated in many different ways." *Dukes*, 131 S. Ct. at 2551. Commonality exists when class claims

> depend on a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. . . . "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."

*Id.* (quoting R. Nagareda, *Class Certification in the Age of Common Aggregate Proof*, 84 N.Y.U. L. REV. 97, 131-32 (2009)). Finding a common answer to whether a law was violated will not be possible, and so commonality will not be satisfied, unless a uniform policy or practice affects all members of the class in the same way. *D.L. v. District of Columbia*, 713 F.3d 120, 126-27 (D.C. Cir. 2013) (observing that *Dukes* "changed the landscape" of commonality analysis).

Defendants do business in 18 jurisdictions at issue. The contracts in each vary in conformity with the governing regulatory regime. The material terms and

applicable laws fit into four groups: pawn jurisdictions, pledge states, loan states, and Texas. Resolving whether the MLA applies to pawns does not answer whether a credit services organization facilitating loans in Texas (but not acting as a lender) is a creditor. Determining whether a loan in the loan states violated the MLA does not answer whether a pledge transaction with no promise to pay and no personal liability involves credit regulated by the MLA. Obtaining common answers to the salient questions requires subclassing based on these groups, in recognition of the contractual and regulatory differences material to the outcome of class members' claims. *See Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1175-80 (11th Cir. 2010) (certification reversed for failure to sufficiently consider commonality and subclassing based on variations in contracts and defenses to common issue of breach). All but overruling the various defenses, the district court found nationwide commonality by discounting the differences. (Order at 39-45.) Yet the only route to nationwide commonality requires first deciding the pawn, pledge, and Texas issues against Defendants on a class basis.[6] Reaching that conclusion by ignoring the teachings of *Dukes* about capacity to generate common answers, the district court manifestly abused its discretion.

---

[6] In a footnote, the district court allowed the possibility of needing a subclass for Texas. (Order at 45 n.11.) Yet none of the Named Plaintiffs would be a member of that subclass or could serve as a class representative for it, meaning certification of a Texas subclass would be improper. *See Johnson v. American Credit Co.*, 581 F.2d 526, 532 (5th Cir. 1978). The same holds true for the pledge and loan states.

13

### III.  The district court failed to conduct a rigorous analysis of predominance, superiority, and manageability.

The sole predominance analysis appearing in the certification Order pertained to Plaintiffs' effort to include in the class customers who signed a CBIS indicating no military affiliation. (Order at 37-39.) The district court concluded that the knowledge element of the MLA would cause individualized issues to overwhelm common issues if a class included customers who provided conflicting information as to military status, particularly a signed negative CBIS. (*Id.*) Conducting a rigorous predominance analysis on that point only, the district court reached the correct conclusion. For all the other predominance problems identified by Defendants (Dkt. 199 at 11-14), the Order does not reflect the same rigorous analysis.[7] That infirmity has an obvious source: Plaintiffs did not offer any explanation of how common issues predominate over the individual issues

---

[7] In a section of the Order headed "Summary," the district court stated its conclusion on predominance in a single sentence: "Questions of law and fact common to the class clearly predominate over individual issues." (Order at 45.) The problem is that the "Summary" does not summarize a preceding discussion but rather reaches bare conclusions in summary fashion. Whatever predominance analysis the district court might have done, the certification order is impermissibly "opaque about the way in which the court conducted its Rule 23 analysis." *Vega v. T-Mobile USA, Inc.*, 563 F.3d 1256, 1268 (11th Cir. 2009). The district court's failure to identify exactly what the common claims, issues, and defenses are, as required by Rule 23(c)(1)(B), makes it impossible to tell what, if any, common matters predominate over the myriad individualized issues. If a rigorous predominance analysis was done for the class ultimately certified, it appears nowhere in the certification Order.

14

identified by Defendants. When the proper rigorous analysis is done, individual issues predominate over any common ones—by far. "[E]ntirely neglect[ing] to consider the critical issue of predominance" for the class that was certified "constitute[s] an obvious abuse of discretion and clear reversible error." *Vega*, 563 F.3d at 1269.

"The predominance inquiry is far more demanding than Rule 23(a)'s commonality requirement." *Vega*, 564 F.3d at 1270. "The predominance inquiry requires an examination of 'the claims, defenses, relevant facts, and applicable substantive law' . . . to assess the degree to which resolution of the class-wide issues will further each individual class member's claims against the defendant." *Babineau v. Federal Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009). Common issues of fact and law predominate if they "'have a direct impact on every class member's effort to establish liability' that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member. *Vega*, 564 F.3d at 1270 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004)) This Court put the predominance test in simple terms:

> If the addition of more plaintiffs to a class requires the presentation of significant amounts of new evidence, that strongly suggests that individual issues (made relevant through the inclusion of these new class members) are important. If, on the other hand, the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole undisturbed, then common issues are likely to predominate.

15

*Klay*, 382 F.3d at 1255.  "[I]f the defendant has non-frivolous defenses to liability that are unique to individual class members, any common questions may well be submerged by individual ones." *Sacred Heart*, 601 F.3d at 1170.

The individualized elements of Plaintiffs' MLA claim and the individualized nature of multiple defenses predominate over any conceivable common issues.  To establish an MLA violation, Plaintiffs must prove Defendants' knowledge of the covered borrower status of each class member.  (Order at 36 (citing 10 U.S.C. § 987(f)).)  Defenses based on the voluntary-payment, *in pari delicto*, and unclean-hands doctrines apply individually to each class member, requiring proof on a customer-by-customer basis.  (Dkt. 199 at 11-12.)  And, of course, damages are individualized for every class member.  (Order at 31-32 (declining to certify under Rule 23(b)(2) because of the individualized nature of the damages).)  So with every customer added to the class, the quantum of proof necessary to take this case to judgment rises in a linear progression, defeating predominance.  *Vega*, 564 F.3d at 1274 ("inquiries into individualized equities attendant to each class member" defeats commonality and predominance, especially for unjust-enrichment claims).[8]

---

[8] If the MLA implies a private right of action for damages at law, the *in pari delicto* and unclean-hands doctrines fall away, though the voluntary-payment doctrine remains as a defense.  If the MLA implies a federal restitution remedy or if state law of unjust enrichment supplies the remedy, the equitable defenses of *in pari delicto* and unclean hands come into play.  Because the applicable defenses vary, the district court's failure to determine the nature of the claim and the remedy impeded the proper rigorous analysis of predominance.

The district court's failure to identify common claims, issues, or defenses, and analyze how they predominate over all of these individualized issues falls well short of the rigorous analysis required for class certification. *See Comcast*, 133 S. Ct. at 1432-33 (requiring district courts to determine whether damages are susceptible to class-wide proof or are individualized and to consider how proof of damages affects the predominance balance); *Sacred Heart*, 601 F.3d at 1179 (even with formulaic damages, the inquiry remains whether common issues as to liability predominate over individual issues as to damages).

While the district court did not grant summary judgment against Defendants on whether the MLA applies to the pawn, pledge, and Texas transactions, the Order's fuzziness on what remains for trial on those defenses points toward the possibility that MLA applicability issues have already been determined. (Order at 12-20, 39-42.) If the principal liability defenses common to contracts within the various jurisdictions have been resolved (*see* Part II.C, *supra*), no class-wide common issues remain to predominate over the many outstanding individual issues. The district court's failure to weigh the outstanding common issues (whatever they may be) against the myriad unresolved individualized issues and explain how the balance tips, an essential part of the rigorous analysis for certification, constitutes a manifest abuse of discretion. *Cf. Ealy v. Pinkerton Gov't Servs, Inc.*, 514 F. App'x 299, 306 (4th Cir. 2013).

The certification Order did not address any of the four non-exclusive superiority factors listed in Rule 23(b)(3).[9] For their part, Plaintiffs admitted that class members may "individually and economically prosecute and pursue their individual damage claims and available remedies . . . in other jurisdictions . . . ." (Dkts. 18 ¶ 157; 76 ¶ 184; 190-1 ¶ 185.) The fourth factor, manageability, presents the most obvious problems, as hundreds of mini-trials are necessary to ascertain dependents, prove knowledge of covered-borrower status, and present evidence relevant to multiple individualized defenses. Yet Plaintiffs failed to address, much less establish, manageability—Plaintiffs presented no trial plan, for example— preventing the district court from satisfying its obligation to "consider 'how a trial of the alleged causes of action would be tried.'" *Vega*, 564 F.3d at 1279. On superiority and manageability, the certification Order states a bare conclusion in summary fashion, without any discussion of the serious manageability problems present. (Order at 45.) Plaintiffs having given the district court no proposal for making this case manageable, and Defendants having identified numerous individualized issues creating grave problems for manageability, the district court's

---

[9] Because discovery closed and dispositive motions were filed *before* Plaintiffs moved to assert class claims under Rule 23(b)(3), Defendants had no opportunity to develop evidence on the Rule 23(b)(3)(A)–(D) factors in discovery. Defendants specifically stated a need to conduct discovery on those and other matters relevant to class certification under (b)(3). (Dkt. 198 at 6-8; 199 at 14 n.7.) Remarking that "no one contends that additional discovery is necessary to support or oppose class certification under Rule 23(b)(3)" (Order at 32), the district court plainly erred.

conclusion cannot comport with the rigorous analysis of manageability required by Rule 23.  As a result, Defendants are facing trial with no manageable trial plan or, indeed, any definitive statement of what class-wide claims, issues, and defenses will be tried.  Courts have roundly rejected as an abuse of discretion this kind of "figure-it-out-as-we-go-along" approach.  *Robinson v. Texas Auto Dealers Ass'n*, 387 F.3d 416, 426 (5th Cir. 2004).

## IV.    The district court abused its discretion in permitting Plaintiffs' untimely assertion of class claims under Rule 23(b)(3).

Finding "good cause" under Rule 16(b), the district court permitted Plaintiffs to change course to assert class claims under Rule 23(b)(3) for the first time more than two years into the case, after the deadline to move to certify a class had passed, discovery had closed, dispositive motions had been filed, and after the hearing on Plaintiffs' motion to certify a class under Rule 23(b)(2) did not go well. (Order at 32-33.)  Controlling authority from this Court precludes a finding of "good cause" unless the moving party acted diligently.  *Romero v. Drummond Co.*, 552 F.3d 1303, 1319 (11th Cir. 2008).  Regrettable tactical decisions—specifically including asserting class claims under Rule 23(b)(2) then switching to Rule 23(b)(3) when certification under (b)(2) flounders—show not diligence but a lack of it.  *Washington v. Vogel*, 158 F.R.D. 689, 692-93 (M.D. Fla. 1994); *see also Mogel v. Unum Life Ins. Co.*, 677 F. Supp. 2d 362, 366-67 (D. Mass. 2009).

Plaintiffs pursued certification under only (b)(2) because it seemed "cleaner" (Dkt. 187 at 48), until running into trouble at the hearing. That permitted Plaintiffs to avoid the expense of mandatory notice to absent class members under Rule 23(c)(2)(B) and caused Defendants to accede to Plaintiffs' insistence on class and merits discovery proceeding simultaneously, with certification brought before the court only at the end of the case. Plaintiffs asked for leave to pursue certification under (b)(3) only when the (b)(2) gambit seemed doomed under *Dukes*. Under these circumstances, Plaintiffs could not show the diligence required by this Court to permit a finding of good cause. Considering the increasing penchant of the class action plaintiff's bar to invoke only (b)(2), hoping to avoid the additional requirements and protections in (b)(3), *see Dukes*, 131 S. Ct. at 2559 (noting "perverse incentives" to avoid (b)(3)'s predominance requirement), this Court's guidance on the permissibility of untimely case-altering course changes when (b)(2) falters would substantially advance the development of class action law.

## RELIEF REQUESTED

Petitioners request that this Court grant permission to appeal from the district court's class-certification Order and, upon due consideration, reverse the certification decision on the fully developed record or vacate and remand with instructions to conduct the required rigorous analysis of the ascertainability, commonality, predominance, superiority, and manageability issues.

This 7th day of April, 2014.

Respectfully submitted,

SMITH, GAMBRELL & RUSSELL, LLP

Stephen M. Forte
Georgia Bar No. 270035
Edward H. Wasmuth, Jr.
Georgia Bar No. 739636
David C. Newman
Georgia Bar No. 541148
Colin R.P. Delaney
Georgia Bar No. 216858

1230 Peachtree Street, N.E.
Promenade, Suite 3100
Atlanta, Georgia  30309-3592
Telephone: 404-815-3500
Facsimile:  404-815-3509

sforte@sgrlaw.com
ewasmuth@sgrlaw.com
dnewman@sgrlaw.com
cdelaney@sgrlaw.com

*Attorneys for Petitioners*

## CERTIFICATE OF COMPLIANCE WITH LENGTH LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This Petition complies with the length limitation of FED. R. APP. P. 5(c) because it does not exceed 20 pages, excluding the disclosure statement, certificate of service, and the accompanying documents required by Rule 5(b)(1)(E), with one-inch margins on all sides.

2.      This Brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this Brief has been prepared in a proportionally spaced type face using Word 2003 in 14 point Times New Roman.

This 7th day of April, 2014.

Colin R.P. Delaney
Georgia Bar No. 216858

*Attorney for Petitioners*

## CERTIFICATE OF SERVICE

THE UNDERSIGNED counsel for Petitioners hereby certifies that this day he caused the foregoing **DEFENDANTS' RULE 23(f) PETITION FOR PERMISSION TO APPEAL FROM AN ORDER ON CLASS CERTIFICATION** to be served on all parties by sending an advance courtesy copy of same via email and by depositing a service copy of same in the United States Mail with sufficient postage paid to ensure First Class delivery to counsel:

Roy E. Barnes, Esq.
John R. Bevis, Esq.
J. Cameron Tribble, Esq.
Barnes Law Group, LLC
31 Atlanta Street
Marietta, Georgia 30060
roy@barneslawgroup.com
bevis@barneslawgroup.com
ctribble@barneslawgroup.com

Kyle S. Fischer, Esq.
Fischer | Scott, LLC
233 12th Street, Suite 200
Columbus, Georgia 31901
kyle.fischer@fischerscott.com

Counsel for Plaintiffs at their last known business addresses.

The undersigned further certifies that this day he entrusted the original and three copies of **DEFENDANTS' RULE 23(f) PETITION FOR PERMISSION TO APPEAL FROM AN ORDER ON CLASS CERTIFICATION** to an associate for filing in person at the public filing desk at the following location:

John Ley, Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St., N.W.
Atlanta, Georgia 30303

This 7th day of April, 2014.

_____
Colin R.P. Delaney
Georgia Bar No. 216858

Smith, Gambrell & Russell, LLP
Promenade, Suite 3100
1230 Peachtree Street, NE
Atlanta, Georgia 30309-3592
Telephone:  404-815-3500
Facsimile:  404-815-3509
Email: cdelaney@sgrlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

JASON M. COX, *et al.*,                      *

     Plaintiffs,                         *

vs.                                          *        CASE NO. 4:11-CV-177 (CDL)

COMMUNITY LOANS OF AMERICA,                  *
INC., *et al.*,
                                         *

     Defendants.                         *
_____             *

O R D E R

Plaintiffs seek to represent a class of active duty military service members and their dependents in a class action against several vehicle title loan companies based on the companies' alleged violation of the Military Lending Act ("MLA"), 10 U.S.C. § 987 (2006).[1] After entering into the vehicle title loan transactions, Plaintiffs were unable to redeem their car titles, and their vehicles were either repossessed or subject to repossession. Plaintiffs maintain that these vehicle title loan transactions are prohibited by the

_____

[1] The "Military Lending Act" is a common name for the John Warner National Defense Authorization Act for Fiscal Year 2007 § 670, Limitations on Terms of Consumer Credit Extended to Servicemembers and Dependents, Pub. L. No. 109-364, 120 Stat. 2083, 2266 (Oct. 17, 2006) (codified at 10 U.S.C. § 987_. The MLA was amended effective January 2, 2013. National Defense Authorization Act for Fiscal Year 2013, Pub. L. No. 112-239, § 662(a), Effect of Violations of Protections on Consumer Credit Extended to Members of the Armed Forces and their Dependents, 126 Stat. 1632, 1785-86 (Jan. 2, 2003) (codified at 10 U.S.C. § 987). Plaintiffs' claims arose before that date, so the Court's references to the MLA are to the pre-2013 version unless otherwise noted.

MLA because the annual percentage rate of interest for each loan far exceeded the MLA's limit of thirty-six percent. Plaintiffs assert claims under the MLA, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and state law.

Presently pending before the Court are Plaintiffs' motions for class certification seeking certification of their MLA and RICO claims under both Federal Rule of Civil Procedure 23(b)(2) (ECF No. 113) and Rule 23(b)(3) (ECF No. 191).[2] Defendants oppose certification, contending that Plaintiffs' claims lack merit and that Plaintiffs failed to satisfy the requirements of Rule 23. Specifically, Defendants argue that Plaintiffs' MLA claims fail as a matter of law because the applicable version of the MLA does not include a private right of action and because, even if it does, the transactions Plaintiffs entered with Defendants are not covered by the MLA. Defendants also maintain that Plaintiffs' RICO claims fail as a matter of law because no evidence exists in the present record supporting the essential elements for these claims. Defendants argue in the alternative that even if Plaintiffs' MLA and RICO claims are viable, a Rule 23(b)(2) class cannot be certified because Plaintiffs seek

---

[2] Plaintiffs initially sought certification of their MLA claims under Rule 23(b)(2) only. They later filed a motion to amend their Complaint to add a claim for certification under Rule 23(b)(3). That motion to amend (ECF No. 190) is granted.

damages that are not merely incidental to their claims for equitable relief.

As explained in the following discussion, the Court finds that a private right of action exists for violations of the MLA, so Defendants are not entitled to judgment as a matter of law on Plaintiffs' MLA claims. The Court further finds, however, that the present record does not support Plaintiffs' RICO claims, and Defendants are entitled to judgment as a matter of law as to those claims. Consequently, Plaintiffs' motion for class certification of the RICO claims is denied. The Court also finds that Plaintiffs seek damages on their MLA claims that are not merely incidental to equitable relief, so Plaintiffs' MLA claims are not suitable for class certification pursuant to Rule 23(b)(2). The Court does find that the certification of a Rule 23(b)(3) class is warranted to the extent explained in the remainder of this Order.

In Section I of this Order, the Court addresses Defendants' merits-based objections to class certification. Section II addresses whether Plaintiffs' claims otherwise satisfy the certification requirements of Rules 23(b)(2) and 23(b)(3).

## I.   Defendants' Merits-Based Objections to Class Certification

Generally, class certification determinations should not be based on whether the plaintiffs will ultimately prevail on the merits. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133

S. Ct. 1184, 1194-95 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."); *see also Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1432 (2013) (noting that rigorous analysis of class certification determination may involve "'considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action'") (quoting *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011). But in the present case, some merits-based issues are inextricably intertwined with Plaintiffs' class certification motions. Moreover, due to the nature of the issues presented by the motions for class certification, the Court, with the consent of the parties, permitted class certification discovery and some merits discovery to proceed simultaneously in an attempt to maximize judicial economy. This scheduling approach resulted in motions for class certification and summary judgment becoming ripe at the same time. Therefore, no party is prejudiced in any way by the Court's consideration of merits-based issues in its evaluation of class certification.

While these merits-based issues are relevant to class certification—because if Plaintiffs' claims lack merit, they

would not be certified for class treatment—these issues are
actually presented through Defendants' motions for summary
judgment.   Defendants first seek summary judgment as to
Plaintiffs' MLA claims through a motion for partial summary
judgment (ECF No. 139), arguing that the MLA does not include a
private right of action.   Defendants filed a second motion for
summary judgment (ECF No. 184), contending among other things
that Plaintiffs' transactions are not covered by the MLA and
that Plaintiffs' RICO claims fail as a matter of law.   The Court
addresses the issues presented by these motions in turn.

> A.   Does the Pre-2013 MLA Authorize a Private Right of
> Action?

As noted above, Defendants seek summary judgment as to
Plaintiffs' MLA claims, contending that the applicable version
of the MLA ("pre-2013 MLA") does not authorize a private right
of action.[3]   It is undisputed that the pre-2013 MLA does not
expressly provide for a private right of action; the remaining
question is whether the pre-2013 MLA implicitly authorizes a
private right of action.   This question is inextricably
intertwined with the question whether there are common issues of
law for class adjudication, so the Court finds it appropriate to
address this issue now.   This issue appears to be a matter of
first impression in this Circuit.   In fact, the parties did not

---

[3]  Again, references and citations to the MLA are to the pre-2013
version of the statute unless otherwise noted.  *See supra* note 1.

5

Case: 14-99998 Date Filed: 04/07/2014 Page: 51 of 93

cite, and the Court has not located, any authority from any Court of Appeals or District Court specifically addressing whether the pre-2013 MLA authorizes a private right of action.

### 1. Private Right of Action Jurisprudence

A private right of action "to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). The issue of whether a statute creates by implication a private right of action is a "question of statutory construction." *Love v. Delta Air Lines*, 310 F.3d 1347, 1351 (11th Cir. 2002) (internal quotation marks omitted). The court must "interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Sandoval*, 532 U.S. at 286. "Statutory intent . . . is determinative." *Id.* "Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286-87. "Congressional intent to create a private right of action will not be presumed. There must be clear evidence of Congress's intent to create a cause of action." *Love*, 310 F.3d at 1353 (internal quotation marks omitted).

To determine whether Congress intended to create a private right of action, the court first "look[s] to the statutory text for 'rights-creating' language." *Love*, 310 F.3d at 1352

(internal quotation marks omitted).  If the language explicitly confers a right directly on a class of persons or identifies "the class for whose especial benefit the statute was enacted," then such language militates in favor of finding an implied right of action.  *Id.* (internal quotation marks omitted); *accord Miller v. Chase Home Fin., LLC*, 677 F.3d 1113, 1116 (11th Cir. 2012) (per curiam).  Second, the court must "examine the statutory structure within which the provision in question is embedded."  *Love*, 310 F.3d at 1353.  "If that statutory structure provides a discernible enforcement mechanism, *Sandoval* teaches that [the courts] ought not imply a private right of action because '[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'"  *Id.* (quoting *Sandoval*, 532 U.S. at 290). Third, if "statutory text and structure have not conclusively resolved whether a private right of action should be implied, [the court] turn[s] to the legislative history and context within which a statute was passed."  *Id.* at 1353.

In *Sandoval*, the Supreme Court concluded that § 602 of Title VI of the Civil Rights Act of 1964 does not create a private right of action for disparate impact claims because § 602 contains an extensive administrative remedial scheme and focuses "neither on the individuals protected nor even on the funding recipients being regulated, but on the agencies that

7

will do the regulating." 532 U.S. at 289-91. Similarly, the
Eleventh Circuit found in *Love* that the Air Carrier Access Act
does not create a private right of action for individuals
alleging violations of its provisions, in part because the
statute established an administrative enforcement regime. *Love*,
310 F.3d at 1357-60; *accord Miller*, 677 F.3d at 1116 (finding
that Home Affordable Modification Program and Emergency Economic
Stabilization Act did not create a private right of action for
homeowners, partly because Congress "gave the Secretary [of the
Treasury] the right to initiate a cause of action, via the
Administrative Procedure Act").

### 2.   The MLA: Purpose, Rights, and Remedies

Using this analytical framework, the Court examines the
purpose, rights and remedies associated with the pre-2013 MLA.
In 2006, the U.S. Department of Defense issued a report on
"predatory lending" to Congress. U.S. Dep't of Defense, Report
On Predatory Lending Practices Directed at Members of the Armed
Forces and Their Dependents (Aug. 9, 2006) [DoD Report],
http://www.defense.gov/pubs/pdfs/Report_to_Congress_final.pdf
(last visited Mar. 19, 2014). The report concluded that
predatory lending to military personnel, including car title
loans, "undermines military readiness, harms the morale of
troops and their families, and adds to the cost of fielding an
all-volunteer fighting force." *Id.* at 9. The Department of

Defense recommended prohibiting lenders from using "car title pawns as security for obligations." *Id.* at 7, 51.

In response to the DoD Report, Congress enacted the MLA. The MLA provides that a "creditor who extends consumer credit to a covered member of the armed forces" "may not impose an annual percentage rate of interest greater than 36 percent with respect to the consumer credit extended." 10 U.S.C. § 987(a)-(b) (2006). The MLA also makes it unlawful for a "creditor to extend consumer credit to a covered member . . . with respect to which" the creditor uses "the title of a vehicle as security for the obligation." *Id.* § 987(e)(5).

The pre-2013 MLA contains a "Penalties and Remedies" section. That section, which is still part of the current MLA, provides four penalties and remedies. First, creditors who knowingly violate the MLA are guilty of a misdemeanor. *Id.* § 987(f)(1). Second, "[t]he remedies and rights provided under this section are in addition to and do not preclude any remedy otherwise available under law to the person claiming relief under this section, including any award for consequential and punitive damages." *Id.* § 987(f)(2). Third, "[a]ny credit agreement, promissory note, or other contract prohibited under [the MLA] is void from the inception of such contract." *Id.* § 987(f)(3). And fourth, "no agreement to arbitrate any dispute involving the extension of consumer credit shall be

enforceable against any covered member or dependent of such a member, or any person who was a covered member or dependent of that member when the agreement was made." *Id.* § 987(f)(4).

Although the pre-2013 MLA did not include an express civil remedy, the Court finds that Congress intended to create a private right of action. First, as noted above, the pre-2013 MLA provides that "[a]ny credit agreement, promissory note, or other contract prohibited under [the MLA] is void from the inception of such contract." *Id.* § 987(f)(3). The Supreme Court found a private right of action based on similar language in § 215 of the Investment Advisers Act of 1940. *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 18 (1979) ("By declaring certain contracts void, § 215 by its terms necessarily contemplates that the issue of voidness under its criteria may be litigated somewhere."). Second, the pre-2013 MLA provides that arbitration clauses in contracts covered by the MLA are not enforceable against covered borrowers. 10 U.S.C. § 987(f)(4). Such a provision would not be necessary if there were no private right of action under the MLA. Third, the pre-2013 MLA makes clear that the remedies and rights provided under the MLA "are in addition to and do not preclude any remedy otherwise available under law to the person claiming relief under this section, including any award for consequential and punitive damages." *Id.* § 987(f)(2). Thus, Congress obviously intended

10

that a covered borrower could seek relief through litigation under the MLA.  It is also significant that unlike the statutes in *Sandoval* and *Love*, the pre-2013 MLA does not establish an administrative enforcement regime.  For all of these reasons, the Court finds that the pre-2013 MLA authorizes a private right of action, including a private right of action for damages.

The Court notes that this conclusion is consistent with the rationale of many district courts that have considered a similar provision in the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. app. § 501 *et seq*.  The SCRA caps the amount of interest that may be charged on obligations incurred by servicemembers while they are on active duty.  50 U.S.C. app. § 527(a).  Like the MLA, the SCRA does not provide an express civil remedy or an administrative enforcement regime for violations of the interest rate cap.  It simply sets the cap.  Several district courts have concluded that Congress intended to create a private remedy under § 527 because without it, the relief provided under that section would be "of no value at all."  *Moll v. Ford Consumer Fin. Co.*, No. 97 C 5044, 1998 WL 142411, at *4 (N.D. Ill. Mar. 23, 1998) (internal quotation marks omitted) (evaluating 50 U.S.C. app. § 526 (2002), which is now codified as amended at 50 U.S.C. app. § 527).  "That is, if no private cause of action is implied, creditors could simply ignore the mandate of § 52[7] and then claim that they cannot be held responsible.  Congress

11

could not have intended such a result." *Id.; accord Frazier v.
HSBC Mortg. Servs., Inc.*, No. 8:08-cv-02396-T-24 TGW, 2009 WL
4015574, at *3-*5 (M.D. Fla. Nov. 19, 2009) (finding private
right of action under SCRA § 527); *Cathey v. First Republic
Bank*, No. 00-2001-M, 2001 WL 36260354, at *6 (W.D. La. July 6,
2001) (noting that without a private right of action, banks
could simply ignore the SCRA and "not worry about lowering the
interest rates. If they could not be sued, why bother obeying
the law?"). The persuasive rationale in these SCRA cases
supports the Court's finding that a private right of action for
damages exists under the MLA. The Court thus rejects this
argument for denial of class certification, and Defendants'
Motion for Partial Summary Judgment (ECF No. 139) is denied.[4]

B.   Are Plaintiffs' Transactions Covered by the MLA?

The named Plaintiffs in this action entered into
transactions in the states of Georgia and Alabama. Defendants
argue that these claims fail as a matter of law because
Defendants who entered these transactions are not "creditors"
who extend "consumer credit" within the meaning of the MLA.
Specifically, Defendants Georgia Auto Pawn, Inc. and Alabama
Title Loans, Inc. represent that they are pawnbrokers operating

---

[4] Even if the specific type of remedy is not mentioned in the MLA, the
Court knows of no reason why an unjust enrichment remedy could not be
pursued given that the contracts that violate the MLA are deemed void
from inception. Defendants' motion for summary judgment on this issue
is also denied.

under state pawnshop statutes.  Defendants argue that the "pawn" transactions are creatures of state law that do not involve "credit" within the meaning of the MLA.  In support of this argument, Defendants point out that: (1) the agreements refer to each transaction as a "pawn transaction," (2) the agreements use "pawn" language (pawnbroker not lender, pledgor not borrower), (3) the customers had no obligation to pay because they had no obligation to redeem their vehicle titles, and (4) the customers did not face any personal liability in connection with the transaction.  The Court previously rejected these arguments in its denial of Defendants' motion to dismiss.  Defendants' arguments are no more persuasive today than when the Court thoroughly considered them at the motion to dismiss stage. Nevertheless, the Court explains its rationale again, starting with an examination of the applicable MLA provisions followed by an analysis of the contract language.

### 1.   MLA Definitions

Under the MLA, a "creditor who extends consumer credit to a covered member of the armed forces or a dependent of such a member . . . may not impose an annual percentage rate of interest greater than 36 percent with respect to the consumer credit."  10 U.S.C. § 987(a), (b).  The statute also provides several limitations on creditors who extend consumer credit to

covered borrowers. *Id.* § 987(e). The MLA preempts inconsistent state laws. *Id.* § 987(d).

The MLA does not define "creditor" or "consumer credit." Rather, the statute directed the Secretary of Defense to prescribe regulations establishing those definitions. *Id.* § 987(h)(2)(D), (3). In the final rule adding new regulations to implement the provisions of the MLA, the Department of Defense stated that "vehicle title loans should be included within the definition of consumer credit, and that covering such transactions is consistent with the law's purpose." Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 72 Fed. Reg. 50,580, 50,586 (Aug. 31, 2007).

The regulations contain the following definitions:

"Creditor" is "a person who is engaged in the business of extending consumer credit with respect to a consumer credit transaction covered by this part." 32 C.F.R. § 232.3(e) (2007). The term "'person' includes a natural person, organization, corporation, partnership, proprietorship, association, cooperation, estate, trust, and any other business entity and who otherwise meets the definition of 'creditor' for purposes of Regulation Z."[5] *Id.*

---

[5] "Regulation Z" is a Truth in Lending regulation, 12 C.F.R. pt. 226.

Case: 14-80008   Date Filed: 04/07/2014   Page: 60 of 93

"Credit" is "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." *Id.* § 232.3(d).

"Consumer credit" is "closed-end credit offered or extended to a covered borrower primarily for personal, family or household purposes" and includes "vehicle title loans," which are defined as "Closed-end credit with a term of 181 days or fewer that is secured by the title to a motor vehicle, that has been registered for use on public roads and owned by a covered borrower" other than a "credit transaction to finance the purchase or lease of a motor vehicle when the credit is secured by the vehicle being purchased or leased." *Id.* § 232.3(b)(1)(ii), (b)(2)(ii) (emphasis added).

"Closed-end credit" is defined as "credit other than 'open-end credit' as that term is defined in Regulation Z (Truth in Lending), 12 CFR part 226." *Id.* § 232.3(a). This definition of "closed-end credit" is identical to the definition of "closed-end credit" in Regulation Z, which defines "closed-end credit" as "consumer credit other than 'open-end credit' as defined in this section." 12 C.F.R. § 226.2(a)(10) (2011). "Open-end credit" is defined in Regulation Z as "consumer credit extended by a creditor under a plan in which: (i) The creditor reasonably contemplates repeated transactions; (ii) The creditor may impose a finance charge from time to time on an outstanding unpaid

15

balance; and (iii) The amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent that any outstanding balance is repaid." *Id.* § 226.2(a)(20).

The Federal Reserve Board promulgated Official Staff Interpretations to Regulation Z and included "pawn transactions" as a type of closed-end credit transaction. 12 C.F.R. pt. 226, supp. I, subpt. C ¶ 17(c)(1)(18) (interpretation regarding 12 C.F.R. § 226.17(c)). "Pawn transactions" occur when, "in connection with an extension of credit, a consumer pledges or sells an item to a pawnbroker creditor in return for a sum of money and retains the right to redeem the item for a greater sum (the redemption price) within a specified period of time." *Id.* The Department of Defense specifically adopted the Federal Reserve Board's Official Staff Interpretations to Regulation Z. 32 C.F.R. § 232.3(i) ("Regulation Z means any of the rules, regulations, or interpretations thereof, issued by the Board of Governors of the Federal Reserve System to implement the Truth in Lending Act, as amended, from time to time, including any interpretation or approval issued by an official or employee duly authorized by the Board of Governors of the Federal Reserve System to issue such interpretations or approvals.").

In crafting the implementing regulations, the Department of Defense emphasized that its major concern was "the debt trap

some forms of credit can present for Service members and their families." The Department of Defense highlighted that "[t]he combination of little-to-no regard for the borrower's ability to repay the loan, unrealistic payment schedule, high fees, and interest and the opportunity to roll over the loan instead of repaying it, can create a cycle of debt for financially overburdened Service members and their families." 72 Fed. Reg. at at 50,582. The Department of Defense noted that vehicle title loans can lead to such a debt trap because they "are generally made for 30 days with high interest/fee structures (average of 295 Annual Percentage Rate (APR))" and because many states allow these loans to "be rolled over by the borrower several times if the borrower is unable to pay the principal and interest when due." *Id.* "If not paid or rolled over, many states allow the creditor to repossess the vehicle and in some states the borrower is not entitled to any portion of the proceeds of the vehicle sale." *Id.*

## 2. *The Contract Language*

The current record includes exemplar contracts for Alabama and Georgia, which Defendants contend are substantially similar to the contracts entered by the named Plaintiffs. *See* Defs.' Mot. for Summ. J. Ex. A, Fields Decl. Tab 1, ECF No. 184-3 at 9-21. The Alabama and Georgia documents do use the terms "pawn transaction," "pledgor," and "pawnbroker." *Id.* at CLA001414-16,

17

Ala. Exemplar Contract, ECF No. 184-3 at 10-12; *Id.* at CLA001152-54, Ga. Exemplar Contract, ECF No. 184-3 at 14-16.

But these agreements also include language typically associated with consumer loan transactions. They refer to the "cost of [the customer's] credit," the "dollar amount the credit will cost" the customer, and "amount of credit provided to" the customer.[6] Ala. Exemplar Contract at CLA001414; Ga. Exemplar Contract at CLA001152. The agreements state that the customers "are giving a security interest in the certificate of title" to the vehicle. Ala. Exemplar Contract at CLA001414; Ga. Exemplar Contract at CLA001152. The agreements authorize Defendants to register a lien on the certificate of title. Ala. Exemplar Contract at CLA001414; Ga. Exemplar Contract at CLA001152. Also, there is evidence that both Alabama and Georgia customers received notices from Defendants which stated that the customers' automobiles had "been pledged as security for the

---

[6] Defendants argue that the Court should not consider these disclosures, which are required under the Truth in Lending Act ("TILA"). Defendants do not dispute that the transactions are "closed-end credit" transactions within the meaning of TILA, but they contend that the MLA regulation did not adopt TILA's definition of "closed-end credit." Defendants made the same argument at the Motion to Dismiss stage, and the Court rejected it. *Cox v. Cmty. Loans of Am., Inc.*, No. 4:11-cv-177 (CDL), 2012 WL 773496, at *7-*8 (M.D. Ga. Mar. 8, 2012). As discussed above and in the Court's order denying Defendants' Motion to Dismiss, the Department of Defense *copied* Regulation Z's definition of "closed-end credit." The Official Staff Interpretation to Regulation Z—which was specifically adopted by the Department of Defense, *see* 32 C.F.R. § 232.3(i)—included "pawn transactions" as a type of closed-end credit transaction. 12 C.F.R. pt. 226, supp. I, subpt. C ¶ 17(c)(1)(18) (interpretation regarding 12 C.F.R. § 226.17(c)).

pawn," emphasized that a pawn "is a more expensive way of borrowing money," asked the customer to acknowledge that he had "borrowed" money from one of the Defendants, and asked the customer to acknowledge that "continued ownership" of the customer's vehicle would be "at risk" if the amount due was not paid. Am. Compl. Ex. C at 11, Reminder to Pledgor, ECF No. 18-1 at 24; Am. Compl. Ex. D at 4, Reminder to Pledgor, ECF No. 18-1 at 42.

Notwithstanding this consumer credit language in the agreements, Defendants argue that Plaintiffs did not take on "debt" because Plaintiffs did not incur any personal liability to repay the "money advanced." Instead, Defendants contend that Plaintiffs sold their vehicles to Defendants, reserving the right to repurchase the vehicle and to continue using the vehicle until the time for repurchase expired. Thus, under the applicable *state* law, these transactions are not deemed "loans."

The Court rejected that exact argument in denying Defendants' Motion to Dismiss. *Cox*, 2012 WL 773496, at *6-*8. The present record does not warrant reconsideration of this decision. If the MLA defined "consumer credit transaction" by deferring to state law definitions of those terms, then Defendants' argument would be more persuasive. But that is not how the MLA defines covered transactions, and significantly, the MLA preempts state law that is inconsistent with the MLA.    10

19

U.S.C. § 987(d).   Therefore, to the extent that Georgia or Alabama law conflicts with the MLA, the state law is preempted. It does not matter that Georgia and Alabama would categorize the transactions as "pawns" rather than "loans."   What matters is that, based on the present record, the named Plaintiffs deposited a vehicle title with a Defendant as security for the payment of a debt.   If a specific sum of money is not paid, then the Plaintiff loses the title to the car, as well as the car itself.   Even though these transactions may not be considered "credit" transactions under state law, the Court finds that they are "consumer credit" transactions within the meaning of the MLA.[7]   Accordingly, to the extent that Defendants seek summary judgment as to these claims, that motion is denied, and any corresponding argument that these claims are not suitable for class certification is rejected.

C.   Plaintiffs' RICO Claims

In addition to their claims under the MLA, Plaintiffs assert that Defendants' violation of the MLA gives rise to claims under RICO, and they seek to have those claims included

---

[7] Defendants repeat the argument they made at the Motion to Dismiss stage regarding the Rule of Lenity.   The Court previously rejected that argument because the record at the Motion to Dismiss stage showed that Defendants acknowledged that "pawn transactions" are a type of "closed-end credit transaction" within the meaning of the TILA.   *Cox*, 2012 WL 773496, at *7.   The present record likewise establishes that Defendants recognized that "pawn transactions" are a type of "closed-end credit transaction" within the meaning of the TILA, which has the same definition of "closed-end credit transaction" as the MLA.

in any class certification.  Defendants respond that Plaintiffs'
RICO claims should not be certified because they all fail as a
matter of law, and they move for summary judgment as to those
claims.  Plaintiffs' RICO claims are against Defendants Robert
I. Reich, Terry Fields, Community Loans, Alabama Title Loans,
and Georgia Auto Pawn.  Reich is the CEO and Fields is the CFO
of Community Loans, Alabama Title Loans, and Georgia Auto Pawn.
They manage and control the activities of those companies.
Plaintiffs assert that Alabama Title Loans and Georgia Auto Pawn
constitute an "enterprise" within the meaning of RICO and that
Community Loans, Reich, and Fields are "persons" who are
associated with the enterprise and participate in the conduct of
the enterprise's affairs through the collection of unlawful
debt.[8]  Plaintiffs assert RICO claims under each subsection of
18 U.S.C. § 1962.  Plaintiffs' RICO civil claims are asserted

_____

[8] Plaintiffs also contend that Defendants engaged in a pattern of
racketeering activity of mail and wire fraud.  "Mail fraud or wire
fraud occurs when a person (1) intentionally participates in a scheme
to defraud another of money or property and (2) uses the mails or
wires in furtherance of that scheme."  *Johnson Enters. of
Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1317 (11th Cir.
1998) (internal quotation marks omitted).  To have a scheme to
defraud, there must be "proof of a material misrepresentation, or the
omission or concealment of a material fact calculated to deceive
another out of money or property."  *United States v. Maxwell*, 579 F.3d
1282, 1299 (11th Cir. 2009).
    Plaintiffs contend that Defendants represented to Plaintiffs that
their title loan transactions and renewals were lawful and valid debts
even though the transactions violated the MLA.  Plaintiffs did not
point to any evidence that Defendants explicitly made representations
about whether the transactions complied with the MLA.  The Court
declines to conclude that implicit misrepresentation of a legal
conclusion constitutes fraud under the specific circumstances
presented here.

under 18 U.S.C. § 1964(c), which provides a cause of action to persons injured "by reason of" a defendant's alleged RICO violation. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006) ("[A] plaintiff may sue under § 1964(c) only if the alleged RICO violation was the proximate cause of the plaintiff's injury.").

 1. *Claim Under 18 U.S.C. § 1962(a)*

18 U.S.C. § 1962(a) prohibits the use or investment of illegally derived income to acquire, establish, or operate an enterprise:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, . . . through collection of an unlawful debt in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

The Eleventh Circuit has not addressed what a plaintiff must prove to establish a civil RICO claim under § 1962(a). The majority of courts that have considered the issue have adopted the investment rule: the plaintiff must show that he "was injured by the use or investment of racketeering income[, and r]einvestment of proceeds from alleged racketeering activity back into the enterprise to continue its racketeering activity is insufficient to show proximate causation." *Sybersound*

*Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008);
*accord Fogie v. THORN Ams., Inc.*, 190 F.3d 889, 896 (8th Cir.
1999); *see also, e.g., Vicom v. Harbridge Merchant Servs., Inc.*,
20 F.3d 771, 778-79 n.6 (7th Cir. 1994) (collecting cases which
hold that (1) "injury caused by the predicate racketeering acts
is inadequate" to state a claim under § 1962(a) and (2) "the
mere reinvestment of the racketeering proceeds into a business
activity is not sufficient for § 1962(a) standing"); *Ouaknine v.
MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990) ("[T]he essence of a
violation of § 1962(a) is not commission of predicate acts but
investment of racketeering income."). *But see Busby v. Crown
Supply, Inc.*, 896 F.2d 833, 839-40 (4th Cir. 1990) (rejecting
"investment rule"). The Court will follow the majority rule.

Here, Plaintiffs contend that Defendants received income
from the collection of unlawful debts, but they have not pointed
to evidence that Defendants did anything other than reinvest the
proceeds back into the enterprise. And they have not presented
evidence from which a reasonable jury could conclude that the
investment of illegal income was the proximate cause of their
injury. Rather, they assert that they were injured by the
predicate act—the allegedly unlawful collection of a debt. For
these reasons, Plaintiffs' § 1962(a) RICO claim fails, and
Defendants' summary judgment motion is granted as to that claim.

2.   *Claim under 18 U.S.C. § 1962(b)*

Under 18 U.S.C. § 1962(b), it is "unlawful for any person . . . through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." Plaintiffs did not respond to Defendants' arguments regarding this claim, so the Court finds that Plaintiffs abandoned it. Plaintiffs also did not point to evidence that any of the Defendants acquired or controlled the alleged enterprise through collection of an unlawful debt; the undisputed evidence shows that ownership and control of Community Loans, Georgia Auto Pawn, and Alabama Title Loans has not changed since before implementation of the MLA. For these reasons, Plaintiffs' § 1962(b) RICO claim fails, and summary judgment is granted as to that claim.

3.   *Claim under 18 U.S.C. § 1962(c)*

Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through . . . collection of unlawful debt." Under this subsection, the enterprise is the vehicle through which the unlawful activity is committed. Section 1962(c) requires that the RICO "person" be "separate and

24

distinct" from the RICO "enterprise." *United States v. Goldin Indus., Inc.*, 219 F.3d 1268, 1270 (11th Cir. 2000) (en banc). This "distinctness requirement" applies when the "singular person or entity is defined as both the person and the only entity comprising the enterprise." *United States v. Goldin Indus., Inc.*, 219 F.3d 1271, 1275 (11th Cir. 2000). "Under the 'non-identity' or 'distinctness' requirement, a corporation may not be liable under section 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members. An organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself." *Davis v. Mut. Life Ins. Co. of N.Y.*, 6. F.3d 367, 367 (6th Cir. 1993) (cited with approval in *Goldin*, 219 F.3d at 1276). "RICO forbids the imposition of liability where the enterprise is nothing more than a subdivision or a part of the person." *Goldin*, 219 F.3d at 1276.

Plaintiffs assert that Reich and Fields, who are officers of Community Loans and its wholly-owned subsidiaries, Alabama Title Loans and Georgia Auto Pawn, directed and controlled the operations of the three companies. Plaintiffs further assert that Community Loans, Alabama Title Loans, and Georgia Auto Pawn engaged in the collection of unlawful debts when they collected on transactions that violated the MLA. The question for the

25

Court is whether each corporation and individual can be considered a "person" under § 1962(c) while also being considered jointly as the enterprise.

The Eleventh Circuit has not decided whether a corporation that engages in the collection of unlawful debts (or a pattern of racketeering activity) through an enterprise comprised only of itself, its employees, and its wholly-owned subsidiaries is sufficiently distinct from its subsidiaries and employees to satisfy the § 1962(c) distinctiveness requirement. *Goldin*, 219 F.3d at 1276 n.7. The Eighth Circuit concluded that a subsidiary is not "sufficiently distinct" from its parent for purposes of the § 1962(c) distinctiveness requirement. *Fogie v. THORN Ams., Inc.*, 190 F.3d 889, 898 (8th Cir. 1999). Likewise, the Seventh Circuit found that related business entities cannot serve as both the person and the enterprise: "A parent and its wholly owned subsidiaries no more have sufficient distinctness to trigger RICO liability than to trigger liability for conspiring in violation of the Sherman Act, unless the enterprise's decision to operate through subsidiaries rather than divisions somehow facilitated its unlawful activity[.]" *Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 934 (7th Cir. 2003) (citations omitted) (finding that RICO claim failed "because the enterprise alleged to have been conducted through a pattern of racketeering activity . . . is a wholly owned

26

subsidiary of the alleged racketeer"); *see also Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999) ("A firm and its employees, or a parent and its subsidiaries, are not an enterprise separate from the firm itself.").

Plaintiffs assert that the "enterprise" here is comprised of two subsidiaries of Community Loans: Georgia Auto Pawn and Alabama Title Loans. Plaintiffs argue that when Georgia Auto Pawn and Alabama Title Loans collected on transactions that violated the MLA, they engaged in the collection of unlawful debts within the meaning of RICO. Plaintiffs contend that Community Loans and its employees, Reich and Fields (who are also officers of Georgia Auto Pawn and Alabama Title Loans) directed and controlled the operations of the enterprise (Georgia Auto Pawn and Alabama Title Loans). Plaintiffs directed the Court to no authority supporting the conclusion that the "enterprise" here (the two subsidiaries) is sufficiently distinct from the "persons" (Community Loans and its employees) such that a RICO claim can be maintained under § 1962(c). Where related entities act "within the scope of a single corporate structure, guided by a single corporate consciousness," it "would be inconsistent for a RICO person, acting within the scope of its authority, to be subject to liability simply because it is separately incorporated." *Goldin*, 219 F.3d at 1276 (internal quotation marks omitted);

27

*accord Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1367 (M.D. Fla. 2005) (finding that corporation that associated with its employees and subsidiaries did not satisfy § 1962(c)'s distinctness requirement).  As discussed above, the courts that have considered the issue concluded that a parent company which conducts business through an enterprise comprised only of the parent company's wholly-owned subsidiaries is not sufficiently separate from the enterprise for purposes of § 1962(c)'s distinctness requirement.  *Bucklew*, 329 F.3d at 934; *Lockheed Martin Corp.*, 357 F. Supp. 2d at 1367.  Likewise, employees of that parent company who make business decisions relating to the enterprise on behalf of the parent company are not sufficiently separate from the enterprise for purposes of section 1962(c).  For these reasons, Plaintiffs' § 1962(c) RICO claim fails, and summary judgment is granted as to that claim.

### 4.   Claim under 18 U.S.C. § 1962(d)

Under 18 U.S.C. § 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  Given that the Court has found that Plaintiffs' claims under § 1962(a)-(c) fail, Plaintiffs' RICO conspiracy claim also fails, and Defendants' motion for summary judgment is granted as to that claim.

28

## II.  Plaintiffs' Motions for Class Certification

Based upon the preceding rulings, Plaintiffs' claims under the MLA survive while Plaintiffs' RICO claims fail.  Therefore, the Court next decides whether Plaintiffs' MLA claims satisfy the class certification requirements of Rule 23.  Plaintiffs seek certification of a class of "[a]ll covered members of the armed services and their dependents who, while a Covered Borrower, entered into a vehicle title loan by any means with Defendants in violation of the Military Lending Act . . . from October 1, 2007 to January 2, 2013."  Pls.' Supplemental Br. in Supp. of Class Certification 2, ECF No. 191.  Plaintiffs propose that the class be divided into the following subclasses:

1.    Covered Borrowers who entered a transaction for which Defendants did not obtain a Covered Borrower Identification Statement prior to entering into the transactions;

2.    Covered Borrowers who entered a transaction for which Defendants obtained a Covered Borrower Identification Statement after November 11, 2011 in Georgia, Alabama and Puerto Rico; and

3.    Covered Borrowers who entered a transaction in which there is documentation contained in the loan file reflecting that the applicant was a Covered Borrower.

*Id.*  Plaintiffs propose excluding from the class "anyone who executed a [Covered Borrower Identification Statement] denying their membership as or affiliation with a" member of the military "whose loan file does not contain any documentation reflecting that the applicant is a covered borrower."  *Id.*

29

Plaintiffs initially sought certification only as to their
MLA claims (Counts II and VI) under Federal Rule of Civil
Procedure 23(b)(2).   Plaintiffs later filed a motion to amend
their Complaint to pursue their MLA and RICO claims under Rule
23(b)(3).   The Court first addresses whether the action should
be certified under Rule 23(b)(2) and then addresses whether the
action should be certified under Rule 23(b)(3).

A.   **Plaintiffs' Motion for 23(b)(2) Class Certification**

Plaintiffs seek class certification under Federal Rule of
Civil Procedure 23(b)(2), which permits a class action if "the
party opposing the class has acted or refused to act on grounds
that apply generally to the class, so that final injunctive
relief or corresponding declaratory relief is appropriate
respecting the class as a whole."   Fed. R. Civ. P. 23(b)(2).
Plaintiffs contend that Defendants collected excessive interest
from all class members in violation of the MLA.   Plaintiffs seek
rescission of the contracts, as well as a return of all interest
and principal they paid to Defendants.

Generally, claims for monetary relief may not be certified
under Federal Rule of Civil Procedure 23(b)(2).   *Wal-Mart
Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011).   "Rule
23(b)(2) applies only when a single injunction or declaratory
judgment would provide relief to each member of the class."   *Id.*
Rule 23(b)(2) "does not authorize class certification when each

individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Id.*

*Dukes* left open the question whether a Rule 23(b)(2) class may assert monetary claims that are merely incidental to injunctive or declaratory relief. *Id.* But *Dukes* made it clear that monetary claims are not merely incidental simply because they do not predominate over requests for injunctive and declaratory relief. *Dukes*, 131 S. Ct. at 2559. And the Supreme Court emphasized that Rule 23(b)(2) is not the proper vehicle for class claims involving "individualized award[s] of monetary damages." *Id.* at 2557. That is because a Rule 23(b)(2) class is mandatory, with no opportunity for class members to opt out; the relief sought under Rule 23(b)(2) must affect the entire class at once. *Id.* at 2558.

Here, the damages Plaintiffs seek would flow from a declaration that the contracts they signed are void from the inception. But the damages sought here are not merely incidental to declaratory relief of an indivisible injunction that benefits all class members. Rather, the damages sought are individualized claims for money, which, according to the Supreme Court, "belong in Rule 23(b)(3)" and not Rule 23(b)(2). *Id.* at

31

2558.  Each class member would be entitled to a different amount of damages, depending on the amount of interest paid and the amount of the loan.  For these reasons, the Court finds that this action cannot be certified as a class action pursuant to Rule 23(b)(2).

   B.   Plaintiffs' Motion for 23(b)(3) Certification

   The next question is whether the class may be certified under Federal Rule of Civil Procedure 23(b)(3).  The Court must first determine whether Plaintiffs should be permitted to amend the Complaint a third time to assert claims under Rule 23(b)(3).[9] Plaintiffs initially sought certification under Rule 23(b)(2) only.  Plaintiffs did not seek to add the Rule 23(b)(3) theory until after the Court held a hearing on their motion for class certification.

   The Court finds that good cause exists to permit Plaintiffs to amend their complaint.  First, no one contends that additional discovery is necessary to support or oppose class certification under Rule 23(b)(3).  Whether a Rule 23(b)(3) class should be certified can be decided based on the current record.  Second, Defendants have been aware since the beginning of this litigation that Plaintiffs seek to recover interest

---

[9] The Court permitted Plaintiffs to file their Second Amended Complaint in 2012 under Federal Rule of Civil Procedure 15(a)(2).  The amended scheduling/discovering order entered after Plaintiffs' Second Amended Complaint does not specifically address amendments to the pleadings. Am. Scheduling/Disc. Order, ECF No. 101.

which they contend was unlawfully charged and collected by Defendants. While the procedural rule under which Plaintiffs seek this recovery may have changed, the substance of Plaintiffs' claims remains exactly the same. Plaintiffs' motion to amend the Complaint (ECF No. 190) is granted. The Court must now determine whether and to what extent certification is appropriate under Rule 23(b)(3).

"Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (internal quotation marks omitted). "If the plaintiff's proposed class is adequately defined and clearly ascertainable, the plaintiff must then establish the four requirements listed in Federal Rule of Civil Procedure 23(a)"—"numerosity, commonality, typicality, and adequacy of representation." *Id.* (internal quotation marks omitted. Finally, the plaintiffs must "establish that the proposed class satisfies at least one of the three requirements listed in Rule 23(b)." *Id.* Rule 23(b)(3) "permits class certification if 'the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is superior to other available

33

methods for fairly and efficiently adjudicating the controversy.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)).

    1.   *Adequacy of Plaintiffs' Class Definition*

Defendants argue that the proposed class is not adequately defined because Plaintiffs propose a "fail-safe" class that turns on the legal conclusion of whether a transaction violated the MLA. A "fail-safe" class exists if the class "is defined in a way that precludes membership unless the liability of the defendant is established." *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010); *accord Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) (explaining the flaw in an improper fail-safe class: "Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment"). Though this issue has not specifically been addressed in the Eleventh Circuit, courts in other circuits have concluded that a "'fail-safe' class should not be certified because it is unfair to defendants, it prevents an adverse judgment being entered against plaintiffs, and it is unmanageable because the members of the class could only be known after a determination of liability." *Mazzei v. Money Store*, 288 F.R.D. 45, 55 (S.D.N.Y. 2012). The Court may, however, "redefine the class to bring it within the scope of Rule 23." *Id.*

Based on the parties' extensive filings in this case and
hearings that the Court has conducted, there is little mystery
about who Plaintiffs seek to include in the proposed class.   To
the extent that Plaintiffs' definition of the class may be
construed as an impermissible "fail-safe" class, the Court finds
it appropriate to clarify the definition of the class.   The
Court understands this clarification is consistent with the
Plaintiffs' proposed class definition.   The Court understands
that Plaintiffs propose the following class:

> All covered members of the armed services and their
> dependents who, between October 1, 2007 and January 2,
> 2013, entered into, rolled over, renewed, refinanced,
> or consolidated a vehicle title loan by any means with
> a Defendant that imposed an annual percentage rate of
> greater than 36 percent and required the title of a
> vehicle as security for the obligation for a term of
> 181 days or less.   For purposes of this class
> definition, a covered member of the armed services is
> a member of the armed forces who is (A) on active duty
> under a call or order that does not specify a period
> of 30 days or less; or (B) on active Guard and Reserve
> Duty.   A dependent of a covered member means the
> covered member's spouse, child, or an individual for
> whom the member provided more than one-half of the
> individual's support for 180 days immediately
> preceding the extension of consumer credit.   For
> purposes of this class definition, the phrase "vehicle
> title loan by any means" includes vehicle title loans,
> vehicle title pawns, and vehicle title pledges.

The Court finds that this definition adequately defines the
class.

### 2.   Putative Plaintiffs Who Executed a Negative CBIS

As previously noted, Plaintiffs propose subclasses that depend on whether the borrower executed a "covered borrower identification statement" indicating no affiliation with the military and whether Defendants otherwise had knowledge of that affiliation.  Plaintiffs maintain that even if a borrower denies any affiliation with the military, that borrower should be included in the class if evidence exists that Defendants nevertheless knew that the borrower was affiliated with the military.  For the reasons explained below, the Court finds that the class cannot include such individuals.

The MLA penalizes creditors who *knowingly* violate the MLA. 10 U.S.C. § 987(f).   Under the MLA's implementing regulations, the MLA does not apply to a consumer credit transaction if the applicant signs a "'covered borrower identification statement' . . . indicating that he or she is not a covered borrower" and the "creditor has not determined, pursuant to the optional verification procedures . . . that any such applicant is a covered borrower." 32 C.F.R. § 232.5(a)(1)-(2) (2007).  Based on this "safe harbor" provision, Defendants asked potential customers to complete a Covered Borrower Information Statement ("CBIS").  Defendants continued to make title loans to customers who executed a negative CBIS—meaning that the customer denied being an active duty servicemember or a dependent of an active

36

duty servicemember. Defendants declined to make title loans to individuals who self-identified as covered borrowers by executing a positive CBIS.

Two of Plaintiffs' proposed subclasses are comprised of individuals who executed a negative CBIS. Plaintiffs contend that those individuals, who told Defendants that they were not covered borrowers, should be included in the class if there is documentation in their loan files that reflects an affiliation with the military. Plaintiffs acknowledge that there are "manageability concerns" associated with such potential plaintiffs. Pls.' Supplemental Br. in Supp. of Class Certification 18, ECF No. 191.

The Court finds that even if the four Rule 23(a) requirements are met for the putative plaintiffs who executed a negative CBIS but who had conflicting information in their files regarding their military affiliation, the predominance requirement of Rule 23(b)(3) is not met. Common issues of fact and law predominate if they have "a *direct impact* on every class member's effort to establish liability *that is more substantial than the impact of individualized issues* in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). "If after adjudication of the classwide issues, plaintiffs must still

introduce a great deal of individualized proof or argue a number
of individualized legal points to establish most or all of the
elements of their individual claims, [their] claims are not
suitable for class certification under Rule 23(b)(3)." *Id.*
(alteration in original) (internal quotation marks omitted).
"[I]f the defendant has non-frivolous defenses to liability that
are unique to individual class members, any common questions may
well be submerged by individual ones." *Id.*

Here, Plaintiffs seek to include in the class individuals
whose loan files contain conflicting information. On one hand,
the loan files contain a negative CBIS, which means that the
individual denied being a covered borrower. On the other hand,
the loan files contain documentation suggesting that the
individual may be a member of the military or have an
affiliation with a member of the military. In light of the
conflicting information, it would be necessary to determine for
each potential Plaintiff whether the Defendant may rely on the
CBIS safe harbor. In other words, a factfinder must decide
whether the Defendant knew that the individual was a covered
borrower and entered the transaction anyway. This issue must be
resolved on a person-by-person basis, considering the borrower's
duty status at the time of the transaction as well as when and
under what circumstances the Defendant received documentation
suggesting a military affiliation. Based on these significant

individualized determinations, the Court finds that Rule
23(b)(3)'s predominance requirement is not met for putative
plaintiffs who executed a negative CBIS. Therefore, the Court
declines to certify a class that includes these individuals.
This ruling does not mean that the individuals may not bring MLA
claims individually against Defendants; it simply means that
they cannot proceed as part of a class. The Court notes that
this ruling does not exclude borrowers who entered more than one
vehicle title loan with Defendants and executed a negative CBIS
in connection with some transactions but not others. Only those
transactions in which the negative CBIS was executed would be
excluded from the class litigation.

    3.    *Putative Plaintiffs who Entered Transactions with
Alabama, Georgia, Puerto Rico, Mississippi,
Tennessee and Texas Defendants*

Defendants who operate in Alabama, Georgia, Puerto Rico,
Mississippi, Tennessee, and Texas assert that individuals who
entered transactions in these jurisdictions should be excluded
from the class because these Defendants are not "creditors" who
extend "consumer credit" within the meaning of the MLA. The
Court has previously rejected these arguments as they relate to
Georgia and Alabama transactions engaged in by the named
Plaintiffs in this action. *See supra* Part I.B. Consistent with
that ruling, the Court rejects Defendants' contention that

transactions from these other jurisdictions should be excluded from the class.

### a.    TITLE PAWN JURISDICTIONS

The Court has previously rejected Defendants' argument that consumers from "title pawn" jurisdictions are not covered under the MLA. *See supra* Part I.B.    Therefore, persons who entered transactions in Georgia, Alabama, and Puerto Rico with Defendants Georgia Auto Pawn, Inc., Alabama Title Loans, Inc., and Puerto Rico Auto Loans, LLC shall not be excluded from the class.[10]

### b.    TITLE PLEDGE JURISDICTIONS

Defendants Mississippi Title Loans, Inc. and Tennessee Title Loans, Inc. represent that they operate under state "title pledge" laws.    Defendants contend that the "pledge" transactions do not involve consumer credit extended by creditors because (1) the customers had no obligation to pay because they had no obligation to redeem their vehicle titles, and (2) the customers did not face any personal liability in connection with the transaction.    *See* Miss. Code Ann. § 75-67-415(d) ("A title pledge lender. . . shall not . . . [m]ake any agreement requiring or allowing the personal liability of a pledgor.");

---

[10] As with the Georgia and Alabama exemplar contracts, the present record includes an exemplar contract for the Puerto Rico transactions, which Defendants represent is substantively identical to the Georgia and Alabama contracts.    The Court finds that the same rationale supporting application of the MLA to the Georgia and Alabama transactions applies to the Puerto Rico transactions.

Tenn. Code Ann. § 45-15-115(14) ("A title pledge lender shall not . . . [r]equire a pledgor to provide any additional guaranty as a condition of entering into a title pledge agreement."). Therefore, Defendants contend that consumers who entered into these "pledge" transactions should not be included in the class.

Like the "pawn" contracts, the "pledge" contracts refer to the "cost of [the customer's] credit," the "dollar amount the credit will cost" the customer, and "amount of credit provided to" the customer. Fields Decl. Tab 2 at CLA001301-02, Miss. Exemplar Contract, ECF No. 184-3 at 28-29; *Id.* at CLA001582-84, Tenn. Exemplar Contract, ECF No. 184-3 at 24-26. The agreements state that the customers "are giving a security interest" in the motor vehicle. Miss. Exemplar Contract at CLA001301; Tenn. Exemplar Contract at CLA001582. Unlike the "pawn" contracts, the "pledge" contracts explicitly refer to the transaction as a "loan." Miss. Exemplar Contract at CLA001301; Tenn. Exemplar Contract at CLA001582. The Tennessee Exemplar Contract further states that the customer "will be required to pay additional interest and fees if [he] renew[s] this loan rather than pay the debt in full when due." Tenn. Exemplar Contract at CLA001582.

Based on the present record, the Court finds that putative class members who entered a "pledge" transaction that is substantially similar to the Mississippi and Tennessee Exemplar Contracts entered a "vehicle title loan" within the meaning of

41

the MLA.  Those Plaintiffs entered a "loan" that was secured by the title to a motor vehicle.  If the "loan" is not repaid, then the Plaintiff loses the car title and the car.  Even if such non-recourse loans are not considered "credit" transactions under state law, the Court finds that these title loans are "consumer credit" transactions within the meaning of the MLA, and the "title pledge" putative class members should not be excluded from the class.

c.   TEXAS CAR TITLE LOANS

Defendant Texas Car Title and Payday Loan Services, Inc. represents that it is not a "creditor" within the meaning of the MLA but is a "credit access business" operating under Texas's consumer protection laws.  *See* Tex. Fin. Code Ann. §§ 393.001, 393.221(1).  Therefore, Texas Car Title contends that any claims against it arising from transactions in Texas should not be included in the class.  A credit access business "obtains for a consumer or assists a consumer in obtaining an extension of consumer credit in the form of a . . . motor vehicle title loan."  *Id.* § 393.221(1).

In support of their argument, Defendants point to an exemplar contract for Texas, which they contend is substantially similar to all contracts entered in Texas.  Fields Decl. Tab 3 at CLA001375-77, Tex. Exemplar Contract, ECF No. 184-3 at 32-34. In the exemplar contract, the "lender" is FC Texas Lending, LLC.

42

*Id.* at CLA001375.   The contract refers to a "CSO"—Texas Car Title—which is "the third-party credit services organization who arranged this loan and will issue a letter of credit to Lender to secure repayment of the loan."   *Id.*   The loan itself has an interest rate of 10% per annum, which is the cap set by Texas law.   *Id.*   But in return for its "loan arranging" services, Texas Car Title receives a CSO fee that far exceeds 36% per annum.   *Id.*   Loan payments, including the principal, interest, and finance charge, are to be made "in care of" Texas Car Title and not to the lender.   *Id.*   Texas Car Title may remind the borrower to make loan payments and may "withhold and retain" from the loan payments the CSO fee.   *Id.* at CLA001376.   Finally, Texas Car Title "may release Lender's loan proceeds draft by issuing its own CSO check(s)."   *Id.*

In addition to the loan agreement, a Texas customer separately contracts with Texas Car Title "for credit services related to [the] loan."   *Id.*   The CSO fees paid to Texas Car Title are disclosed in the loan agreement as part of the Truth in Lending Act disclosures.   *Id.* at CLA001375-76.

Plaintiffs acknowledge that Texas Car Title is not the "lender" in the transactions.   Plaintiffs nonetheless contend that Texas Car Title is a creditor within the meaning of the MLA because "credit service charges" are treated the same as interest under the MLA.   The MLA regulations state that a

43

creditor or an assignee "may not impose a [military annual percentage rate] greater than 36 percent in connection with an extension of consumer credit to a covered borrower." 32 C.F.R. § 232.4(b) (2007). A military annual percentage rate "is the cost of the consumer credit transaction expressed as an annual rate" and must be "calculated and disclosed following the rules used for calculating the Annual Percentage Rate (APR) for closed-end credit transactions under Regulation Z (Truth in Lending)." *Id.* § 232.3(h). The military annual percentage rate includes "credit service charges" "if they are financed, deducted from the proceeds of the consumer credit, or otherwise required to be paid as a condition of the credit." *Id.* § 232.3(h)(1)(i).

Under these regulations, the CSO Fee clearly falls within the definition of military annual percentage rate. The issue is whether Texas Car Title is a "creditor" within the meaning of the MLA. Texas Car Title argues that it is not a "creditor" under the MLA because it does not regularly extend consumer credit. Plaintiffs have pointed to evidence that suggests otherwise, including the following: Texas Car Title is authorized to issue the loan check to the borrower, loan payments must be made in care of Texas Car Title, and Texas Car Title is authorized to withhold the CSO fee from the loan payments. A reasonable factfinder could conclude that Texas Car

44

Title arranges the loan, cuts the loan check, collects the loan payments, and receives a credit service charge. Furthermore, Texas Car Title evidently believed that it could be considered a creditor within the meaning of Regulation Z: it made the required Truth in Lending disclosures in the Texas Exemplar Contract. For the foregoing reasons, the Court finds that the Texas putative class members should not be excluded from the class.[11]

### 4. Summary

The Court finds that Plaintiffs may pursue their MLA claims as a class. To summarize, the class is ascertainable because the parties have determined a way to identify covered borrowers who entered a vehicle title loan transaction during the relevant timeframe. There is no suggestion that the numerosity requirement is not met. Questions of law and fact common to the class clearly predominate over individual issues. The claims of the representative parties are typical of the claims of the class, and there is no suggestion that they will not fairly and adequately protect the interests of the class. The class is easily manageable, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. For all of these reasons, the following class

---

[11] The Court does leave open the possibility that a subclass may be appropriate for these Texas claims.

meets the requirements of Rule 23(a) and Rule 23(b)(3) and is certified:

> All covered members of the armed services and their dependents who, between October 1, 2007 and January 2, 2013, entered into, rolled over, renewed, refinanced, or consolidated a vehicle title loan by any means with a Defendant that imposed an annual percentage rate of greater than 36 percent and required the title of a vehicle as security for the obligation for a term of 181 days or less. For purposes of this class definition, a covered member of the armed services is a member of the armed forces who is (A) on active duty under a call or order that does not specify a period of 30 days or less; or (B) on active Guard and Reserve Duty. A dependent of a covered member means the covered member's spouse, child, or an individual for whom the member provided more than one-half of the individual's support for 180 days immediately preceding the extension of consumer credit. For purposes of this class definition, the phrase "vehicle title loan by any means" includes vehicle title loans, vehicle title pawns, and vehicle title pledges, and the phrase "covered members" does not include individuals who executed a statement at the time of the transaction indicating that they were not affiliated with the military.

## CONCLUSION

As discussed above, Plaintiffs' Motion for Class Certification under Federal Rule of Civil Procedure 23(b)(3) and Plaintiffs' Motion to Amend (ECF Nos. 190 & 191) are granted to the extent set forth in this Order; Defendants' Motion for Partial Summary Judgment (ECF No. 139) is denied; Defendants' Motion for Partial Summary Judgment (ECF No. 184) is granted as to Plaintiffs' RICO claims but is otherwise denied to the extent that the remaining issues raised by that motion have been

46

addressed and ruled upon in this Order; and Plaintiffs' Motion
for Class Certification under Federal Rule of Civil Procedure
23(b)(2) (ECF No. 113) is denied.

The Court has attempted to address in today's comprehensive
Order the issues raised by Plaintiffs' Motion for Declaratory
and Injunctive Relief (ECF No. 180) and the issues raised in
Defendants' Motion for Summary Judgment (ECF No. 184) to the
extent that those issues have not been made moot by other
rulings in this Order. Therefore, those motions shall be
administratively terminated.

Within twenty-one days of the date of today's Order, the
parties shall submit a proposed Amended Scheduling and Discovery
Order that includes a timeline for class notice under Federal
Rule of Civil Procedure 23(c)(2)(B) and a proposed schedule for
any additional proceedings in this action.

IT IS SO ORDERED, this 24th day of March, 2014.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE